# HOME TELEPHONE AND TELEGRAPH COMPANY *v.* CITY OF LOS ANGELES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 173.  Argued October 21, 1908.—Decided November 30, 1908.

Only the legislature of a State, or a municipality specifically authorized thereto by the legislature, can surrender by contract a governmental power such as fixing rates.

To grant a corporation the right to charge a specified rate for a specified

time suspends for such period the governmental power of fixing and regulating rates, and in construing a franchise all doubts, both as to existence of contract and authority to make it, must be resolved against such suspension of power.

Whether an inviolable contract for rates exists must be determined in each case on the particular facts involved; even slight differences may turn the balance.

A power given by the State to one of its municipalities to "fix and determine rates," does not authorize that municipality to abandon the power, and to irrevocably establish rates for the entire period of a franchise.

Rate regulation is a legislative, and not a judicial, function, and *quære* whether notice and hearing are necessary to constitute due process of law in fixing rates. Where notice and hearing are indispensable to due process of law, even though the charter does not require it, an ordinance will not be declared unconstitutional at the instance of parties who actually had notice and an opportunity to be heard, as depriving them of property without due process of law within the meaning of the Fourteenth Amendment.

In this case objections to a municipal ordinance requiring a telephone company to report expenditures and receipts are untenable.

A city council is not disqualified from acting in rate regulation because the city is a heavy ratepayer, or because the members might be politically affected by their action.

The rule that every presumption is in favor of the validity of legislation applies to a city ordinance and it will not be held to be unconstitutional within the meaning of the Fourteenth Amendment, as denying the equal protection of the laws, where the party attacking it as imposing unequal rates upon it does not clearly show an improper classification.

This court will not consider the legality or effect of a provision in a city charter for submission of ordinances adopted by the common council to the people on the petition of a specified number of voters, when the ordinance involved was not so submitted.

The ordinances of the city of Los Angeles, fixing telephone rates, *held* not to be unconstitutional either as impairing the obligation of the contract contained in the franchise, as depriving the corporation affected of its property without due process of law or as denying it the equal protection of the law.

155 Fed. Rep. 554, affirmed.

THE facts are stated in the opinion.

*Mr. Oscar A. Trippet,* with whom *Mr. A. Haines* was on the brief, for appellant:

In order to determine the power of the city of Los Angeles, in granting the franchise in question, to enter upon a contract with the grantee thereof as to rates for telephone service, it is necessary to examine first the nature and scope of the power delegated to make the grant; the express requirements to be complied with in making it, and the extent of the discretion left to the granting body.

As bearing upon the question of such power to contract, the Broughton Act of March 11, 1901, and the charter of the city of Los Angeles are to be regarded as concurrent laws. *Los Angeles* v. *Davidson,* 150 California, 59, 63. The principle that the right to compensation is an inseparable incident to every franchise affected with a public use, must be kept in view.

The right to reasonable compensation is an essential and inseparable incident to the exercise of every franchise and privilege affected with a public use. *Stockton Gas Co.* v. *San Joaquin County,* 148 California, 313, 321; *Truckee Turnpike Road* v. *Campbell,* 44 California, 89; *State* v. *Boston &c. R. R.,* 25 Vermont, 433; *State* v. *Laclede Gas Co.,* 102 Missouri, 472; *S. C.,* 15 S. W. Rep. 383; *Water Co.* v. *Los Angeles,* 88 Fed. Rep. 720, 731.

So vital is this right and so absolutely incident is it, that even when it is left to continuous public regulation, unrestrained by contract, it comes under the guaranty of the Fourteenth Amendment. *Smyth* v. *Ames,* 169 U. S. 466, 522–526.

The Broughton Act is vitally related to the power of the city to contract respecting telephone rates, primarily because it requires the franchise to be publicly sold by the city council and in its discretion. The procedure to sell, prescribed by the statute, is contractual at every stage.

The requirement in § 3 of the act, that the successful bidder and his assigns must, during the life of the franchise, pay the municipality two per cent of the gross receipts, shows that the act contemplates that terms of sale of the franchise may embrace an agreement as to rates.

Every consideration. shows that. the Broughton Act conferred power upon the municipalities of the State to contract as to rates for telephone service.

The legislature has power to confer this authority. *Detroit* v. *Detroit &c. Ry. Co.*, 184 U. S. 368; *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 495, 508. The Broughton Act more specifically contemplates authority to municipalities to contract than does any statute considered in the following cases, where the power of the municipalities to contract as to rates was upheld. *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 497; *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558, 570; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1, 3, 14; *Cleveland* v. *Cleveland R. Co.*, 194 U. S. 517; *Cleveland* v. *Cleveland E. R. Co.*, 201 U. S. 529, 540–541; *Omaha Water Company* v. *City of Omaha*, 147 Fed. Rep. 1, 5, 12, 13; *Santa Ana Water Co.* v. *Town of San Buena Ventura*, 56 Fed. Rep. 339; *State* v. *Laclede Gas Light Co.*, 102 Missouri, 485; *S. C.*, 14 S. W. Rep. 974; *City of Bessemer* v. *Bessemer Water Works*, 40 So. Rep. 662.

The city charter concurs with the Broughton Act in conferring power upon the city of Los Angeles to contract as to rates in the sale of a franchise. It expressly confers the power to fix and determine rates for a definite period. It places no limitation upon the period for which the council is so empowered to fix and determine telephone rates. The fixing and determining of rates for a definite period is neither an abandonment nor a suspension of the power to regulate by the exercise of it. *Bessemer* v. *Water Works*, 44 So. Rep. 663; *Vicksburg* v. *Water Works Co.*, 206 U. S. 510; *Cal. Reduction Works* v. *Sanitary Reduction Works*, 199 U. S. 306.

In California the right of a municipality to make a contract for a term of years, controlling the further exercise of legislative or governmental power over its subject-matter during such term, is judicially established. *McBean* v. *City of Fresno*, 112 California, 161; *San Francisco Gas Light Company* v. *Dunn*, 62 California, 585; *Contra Costa Water Co.*. v. *Breed*, 139 Cali-

fornia, 432; *Dolan* v. *Clark*, 143 California, 176; *Los Angeles Water Co.* v. *City of Los Angeles*, 88 Fed. Rep. 720; *Santa Ana Water Co.* v. *Town of San Buena Ventura*, 56 Fed. Rep. 339.

The contemporaneous construction of the Broughton Act and of the powers of the city under its charter are controlling, and is in favor of our contention.

The ordinance "B," constituting the grant of complainant's franchise, embraces a contract as to maximum rates, mutually binding upon complainant and defendant.

When all the circumstances preceding, surrounding and entering into this grant of franchise by the ordinance are considered, it will clearly appear that it constitutes a contract, fixing maximum rates of charges for the term of the franchise. *Vicksburg* v. *Water Works Co.*, 206 U. S. 495; *Cleveland* v. *City Ry. Co.*, 194 U. S. 517; *Detroit* v. *City St. Ry. Co.*, 184 U. S. 368, 375, 389; *Water Co.* v. *Omaha*, 147 Fed. Rep. 1; *Detroit* v. *City Ry. Co.*, 60 Fed. Rep. 161, 171; *Bessemer* v. *Water Works* (Ala.), 44 So. Rep. 663; *State* v. *Laclede Gaslight Co.*, 102 Missouri, 472; *Pingree* v. *Michigan Central R. R. Co.*, 118 Michigan, 314; *State* v. *Yazoo & V. R. Co.*, 62 Mississippi, 607, 641.

*Mr. Leslie R. Hewitt,* with whom *Mr. John W. Shenk* and *Mr. W. B. Mathews* were on the brief, for appellees:

The State has power to regulate charges for telephone service, and this power may be delegated to municipalities. *Munn* v. *Illinois*, 94 U. S. 113; *Des Moines Gas Co.* v. *Des Moines*, 44 Iowa, 105; *People* v. *Suburban R. R. Co.*, 178 Illinois, 594; *St. Louis* v. *Bell Telephone Co.*, 96 Missouri, 623; *McQuillan on Municipal Ordinances*, § 583; *Danville* v. *Danville Water Co.*, 180 Illinois, 233.

The city of Los Angeles did not by the franchise ordinance surrender or suspend its power to regulate appellant's charges for telephone service. *Omaha Water Co.* v. *Omaha*, 147 Fed. Rep. 1, 5; *Munn* v. *Illinois*, 94 U. S. 124; *Budd* v. *New York*, 143 U. S. 517; *Rogers Park Water Co.* v. *Fergus*, 180 U. S. 624, 629; *Los Angeles Water Co.* v. *Los Angeles*, 88 Fed. Rep. 721;

*Walla Walla* v. *Water Co.*, 172 U. S. 1, 15; *Central Trust Co.* v. *Citizens' Ry. Co.*, 82 Fed. Rep. 1, 8; *Freeport Water Co.* v. *Freeport*, 180 U. S. 587; *Danville Water Co.* v. *Danville*, 180 U. S. 619; *Atlantic & Pacific R. R. Co.* v. *United States*, 76 Fed. Rep. 186.

The regulating ordinance does not contravene any of the provisions of the Constitution of the United States. *San Diego Water Co.* v. *San Diego*, 118 California, 556; *Moore* v. *Haddonfield*, 62 N. J. Law, 386; *Cleveland, C. C. & St. L. R. R. Co.* v. *St. Bernard*, 19 Ohio C. C. Rep. 299; *Water Works* v. *San Francisco*, 82 California, 286, 315; *Freeport Water Co.* v. *Freeport*, 180 U. S. 587, 600; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 168; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Chicago &c. Ry. Co.* v. *Minnesota*, 134 U. S. 418; *San Diego Land Co.* v. *National City*, 174 U. S. 739, 748.

MR. JUSTICE MOODY delivered the opinion of the court.

This is a suit in equity brought in the Circuit Court of the United States by the appellant, a telephone company, against the city of Los Angeles, and its officers. The object of the suit is to restrain the enforcement of certain ordinances which fixed the rates to be charged for telephone service; required every person, firm or corporation supplying telephone service to furnish annually to the city council a statement of the revenue from, and expenditures in, the business, and an itemized inventory of the property used in the business, with its cost and value; and provided a penalty for charges in excess of the rates fixed and for failure to furnish the required statements. The defendants demurred to the bill, the demurrer was sustained, and an appeal was taken directly to this court on the constitutional questions, which will be stated.

The ordinances complained of were enacted by virtue of the powers contained in § 31 of the city charter, which is as follows:

"(Sec. 31.) The Council shall have power, by ordinance, to regulate and provide for lighting of streets, laying down gas pipes and erection of lamp posts, electric towers and other apparatus, and to regulate the sale and use of gas and electric

light, and fix and determine the price of gas and electric light, and the rent of gas meters within the city, and regulate the inspection thereof, and to regulate telephone service, and the use of telephones within the city, and to fix and determine the charges for telephones and telephone service, and connections; and to prohibit or regulate the erection of poles for telegraph, telephone or electric wire in the public grounds, streets or alleys, and the placing of wire thereon; and to require the removal from the public grounds, streets or alleys of any or all such poles, and the removal and placing under ground of any or all telegraph, telephone or electric wires."

It was decided by the judge of the court below, and is agreed by the parties, that this section of the charter conferred upon the city council, in conformity with the constitution and laws of the State of California, the power to prescribe charges for telephone service. Not doubting the correctness of this view, we accept it without extended discussion. The power to fix, subject to constitutional limits, the charges of such a business as the furnishing to the public of telephone service is among the powers of government, is legislative in its character, continuing in its nature, and capable of being vested in a municipal corporation.

The company, however, insists that the city, having the authority so to do, has contracted with it that it may maintain the charges for service at a specified standard, and that as the rates prescribed in the ordinances complained of are less than that standard, the ordinances therefore impair the obligation of the contract, in violation of the Constitution of the United States. This is the first question to be considered, and the facts out of which the contention arises are alleged in the bill and admitted by the demurrer.

The company obtained its franchise under the provisions of a statute of the State enacted March 11, 1901 (Stats. 1901, p. 265 [1]), which was later than the adoption of § 31 of the city charter. This statute provides that, among other franchises,

---

[1] Known, and referred to in the brief, as the Broughton Act.

the franchise "to erect or lay telephone wires . . . upon any public street or highway" shall be granted by municipal corporations only upon the conditions prescribed in the act. The conditions enumerated are, that an application for the franchise shall be filed with the governing body of the municipality, of which advertisement, in the discretion of the city council, shall be made; that the advertisement must describe the character of the franchise to be granted and state that it will be sold to the highest bidder, who must pay annually to the municipality, after five years, two per cent of the gross annual receipts of the business; that the franchise shall be struck off to the highest bidder; and that a bond must be given by the purchaser to secure the performance of "every term and condition" of the franchise. There are other provisions not material here. By proceedings conforming to this statute a franchise to construct and operate a telephone system for fifty years was sold to M. Adrian King, which, by assignment, assented to by the city, came into the hands of the plaintiff company, which constructed the works and has since operated them. The franchise was granted by an ordinance. In the view we take of the case we need do no more than state very briefly the main features of the ordinance. It grants a franchise for fifty years, which is to be enjoyed in accordance with terms and conditions named, stipulates for certain free service for the city, and the payment to it, after five years, of two per cent of the gross receipts, and provides that the charges for service shall not exceed specified amounts.

This ordinance, enacted by the city council, which exercises the legislative and business powers of the city, and, as has been shown, the charter power of regulating telephone service and of fixing the charges, contains, it is contended, the contract whose obligation the subsequent ordinances fixing lower rates, impaired. Two questions obviously arise here. Did the city council have the power to enter into a contract fixing, unalterably, during the term of the franchise, charges for telephone service and disabling itself from exercising the charter

power of regulation? If so, was such a contract in fact made? The first of these two questions calls for earlier consideration, for it is needless to consider whether a contract in fact was made until it is determined whether the authority to make the contract was vested in the city. The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme legislature (in this case, the legislature of the State) has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme legislature. The general powers of a municipality or of any other political subdivision of the State are not sufficient. Specific authority for that purpose is required. This proposition is sustained by all the decisions of this court, which will be referred to hereafter, and we need not delay further upon this point.

It has been settled by this court that the State may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. *Detroit* v. *Detroit Citizens' St. Ry. Co.*, 184 U. S. 368, 382; *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, 508. But for the very reason that such a contract has the effect of extinguishing *pro tanto* an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power. *Providence Bank* v. *Billings*, 4 Pet. 514, 561; *Railroad Commission Cases*, 116 U. S. 307, 325; *Vicksburg &c. Railroad Co.* v. *Dennis*, 116 U. S. 665; *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587, 599, 611; *Stanislaus County* v. *San Joaquin C. & I. Co.*, 192 U. S. 201, 211; *Metropolitan Street Ry. Co.* v. *New York*, 199 U. S. 1. And see *Water, Light & Gas*

*Co.* v. *Hutchinson,* 207 U. S. 385. It is obvious that no case, unless it is identical in its facts, can serve as a controlling precedent for another, for differences, slight in themselves, may, through their relation with other facts, turn the balance one way or the other. Illustrations of the truth of this may be found in the cases of *Freeport Water Co.* v. *Freeport City, supra; Rogers Park Water Co.* v. *Fergus,* 180 U. S. 624, and *Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434, where no authorized contract was found, as contrasted with *Detroit* v. *Detroit Citizens' St. Ry. Co., supra,* and *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, where a contrary conclusion was reached.

The facts in this case which seem to us material upon the questions of the authority of the city to contract for rates to be maintained during the term of the franchise are as follows: The charter gave to the council the power ":by ordinance . . . to regulate telephone service and the use of telephones within the city, . . . and to fix and determine the charges for telephones and telephone service and connections." This is an ample authority to exercise the governmental power of regulating charges, but it is no authority to enter into a contract to abandon the governmental power itself. It speaks in words appropriate to describe the authority to exercise the governmental power, but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement. Doubtless, an agreement as to rates might be authorized by the legislature to be made by ordinance. But the ordinance here described was not an ordinance to agree upon the charges, but an ordinance "to fix and determine the charges." It authorizes t e exercise of the governmental power and nothing else. We find no other provision in the charter which by any possibility can be held to authorize a contract upon this important and vital subject. Those relied on for that purpose are printed in the margin.[1]

---

[1] Section 2. (Article I.)

  *     *     *     *     *     *     *     *

"(12.) To manage, control, sell, lease, or otherwise dispose of any

This being the condition of the charter powers, the act of 1901, under which the company derived its franchise, was passed. The first section of that act provided that franchises "shall be granted upon the conditions in this act provided *and not otherwise.*" Here is an emphatic caution against reading

---

or all the property of the said corporation; and to appropriate the income or proceeds thereof to the use of the said corporation; provided that it shall have no power to mortgage or hypothecate its property for any purpose."

\*        \*        \*        \*        \*        \*        \*        \*

" (17.) To provide and maintain a proper and efficient fire department, and make and adopt such measures, rules and regulations for the prevention and extinguishment of fires, and for the preservation of property endangered thereby, as may be deemed expedient."

\*        \*        \*        \*        \*        \*        \*        \*

" (22.) To make and enforce within its limits such local, police, sanitary and other regulations as are not in conflict with general laws and are deemed expedient to maintain the public peace, protect property, promote the public morals and to preserve the health of its inhabitants."

" (23.) To exercise all municipal powers necessary to the complete and efficient management and control of the municipal property, and for the efficient administration of the municipal government, whether such powers be expressly enumerated herein or not, except such powers as are forbidden or are controlled by general law."

" (24.) The powers conferred by this article shall be exercised by ordinance, except as hereinafter provided."

\*        \*        \*        \*        \*        \*        \*        \*

" (Section 12, Article III.) All legislative power of the city is vested in the Council, subject to the power of veto and approval by the Mayor, as hereinafter given, and shall be exercised by ordinance; other action of the Council may be by order upon motion."

" (Sec. 16.) Six members of the Council shall constitute a quorum for the transaction of business, but no ordinance shall be passed or other act done granting a franchise, making any contract, auditing any bill, ordering any work to be done, or supplies to be furnished, disposing of or leasing the city property, ordering any assessment for street improvement, or building sewers, or any other act to be done involving the payment of money, or the incurring of debt by the city, unless two-thirds of the members of the whole Council vote in favor

into the act any conditions which are not clearly expressed in the act itself. In view of this language it cannot be supposed that the legislature intended that so significant and important an authority as that of contracting away a power of regulation conferred by the charter should be inferred from the act in the absence of a grant in express words. But there is no such grant. The argument of the appellant that the authority was granted is based upon the provisions of the act that an application for the franchise must be filed, and, in the discretion of the council, published; that the publication must state "the character of the franchise;" that the city is entitled to a percentage of the receipts; that the grantee must give bond to perform "every term and condition of such franchise;" that no condition shall be inserted which restricts competition or favors one person against another; and that the franchise must be sold to the highest bidder. It is urged that though authority to contract for the maintenance of rates is not expressed in the act, it is necessarily implied from these provisions. But we are of the opinion that there is no such necessary implication, even if anything less than a clear and affirmative expression would be sufficient foundation upon which to rest an authority of this nature. The decisions of this court, upon which the appellant relies, where a contract of this kind was found and enforced, all show unmistakably legislative authority to enter into the contract. In *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558, the contract was in specific terms ratified and confirmed by the legislature. In *Detroit* v. *Detroit Citizens' St. Ry. Co.*, 184 U. S. 368, the contract was made in obedience to an act of the legislature that the rates should be "established by agreement between said company and the corporate authorities." The opinion of the court, after saying (p. 382),

thereof. All other ordinances may be passed by a vote of a majority of the whole Council."

"(Sec. 33.) It shall, by ordinance, provide for maintaining a fire alarm and police telegraph system, and for the cleaning and sprinkling of graded and accepted streets."

"It may be conceded that clear authority from the legislature is needed to enable the city to make a contract or agreement like the ordinance in question, including rates of fare," pointed out (p. 386) that "it was made matter of agreement by the express command of the legislature." In *Cleveland* v. *Cleveland City Ry. Co.*, 194 U. S. 517, the legislative authority conferred upon the municipality was described in the opinion of the court (p. 534) as "comprehensive power to contract with street railway companies in respect to the terms and conditions upon which such roads might be constructed, operated, extended and consolidated." In *Cleveland* v. *Cleveland Electric Ry.*, 201 U. S. 529, precisely the same authority appeared. In *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, the court said (p. 508): "The grant of legislative power upon its face is unrestricted, and authorizes the 'city to provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks.'" Moreover, in this case the construction of the Supreme Court of Mississippi of its own statutes was followed. On the other hand, it was held in *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587, that two acts of the legislature passed on successive days, authorizing municipalities to "contract for a supply of water for public use for a period not exceeding thirty years," and to authorize private persons to construct waterworks "and maintain the same at such rates as may be fixed by ordinance, and for a period not exceeding thirty years," did not confer an authority upon the municipality to contract that the water company should be exempt from the exercise of the governmental power to regulate rates. In this case, too, the construction of the highest court of the State was followed. See *Rogers Park Water Co.* v. *Fergus*, 180 U. S. 624. All these cases agree that the legislative authority to the municipality to make the contract must clearly and unmistakably appear. It does not so appear in the case at bar. The appellant has failed to show that the city had legislative authority to make

a contract of exemption from the exercise of the power of regulation conferred in the charter. It therefore becomes unnecessary to consider whether such a contract in fact was made. The appellant's contention, that there was a violation of the obligation of its contract, must therefore be denied.

The appellant also contends that the ordinances fixing rates are wanting in due process of law, and therefore violate the Fourteenth Amendment of the Constitution of the United States, because the section (31) of the charter, under whose authority they were enacted, does not expressly provide for notice and hearing before action. But rate regulation is purely a legislative function and, even where exercised by a subordinate body upon which it is conferred, the notice and hearing essential in judicial proceedings and, for peculiar reasons, in some forms of taxation (see *Londoner* v. *Denver*, 210 U. S. 373) would not seem to be indispensable. It may be that the authority to regulate rates, conferred upon the city council by § 31 of the charter, is not an authority, arbitrarily, and without investigation, to fix rates of charges, and that if charges were fixed in that manner the act would be beyond the authority of the council. It is not unlikely that the California courts would give this construction to the ordinance. *San Diego Water Co.* v. *San Diego,* 118 California, 556. Acting within the authority thus limited it would seem that the character and extent of the investigation made and notice and hearing afforded, in the exercise of this legislative function, would be left to the discretion of the body exercising it. It must not be forgotten that, presumably, the courts of the States, and certainly the courts of the United States, are open to those who complain that their property has been confiscated by an act of regulation of this kind, and that the latter courts will, under all circumstances, determine for themselves whether such confiscation exists. But we need not now decide whether notice and hearing were required. Both were given in this case. An ordinance of the city provided that the rates should be fixed at a regular and special meeting of the city council

held during the month of February of each year, and another ordinance, as has been shown, required the telephone company to render annually, in the month of February, to the city council a statement of its receipts, expenditures and property employed in the business, facts which would be material on the question of fixing reasonable rates. This shows that a sufficient notice and hearing were afforded to the appellant, if it had chosen to avail itself of them, instead of declining to furnish all information, as it did. If notice and an opportunity to be heard were indispensable, which we do not decide, it is enough that, although the charter be silent, such notice and hearing were afforded by ordinance, as in this case. So, it was held in *Paulsen* v. *Portland,* 149 U. S. 30, 38, and it was held in *San Diego Land Company* v. *National City,* 174 U. S. 739, that the kind of notice and hearing (in that case provided by statute) which the ordinance in this case afforded was sufficient. For these reasons the contention of the appellant on this part of the case is denied.

We do not understand that an objection to the ordinance requiring the statement of the appellant's receipts, expenditures and property is made, except in so far as it is a step in the rate-making process. If a further objection is made we see nothing in it. See *San Diego Land Co.* v. *National City, supra.*

The appellant further insists that the city council is not an impartial tribunal, because, in effect, it is a judge in its own case. It is too late, however, after the many decisions of this court, which have either decided or recognized that the governing body of a city may be authorized to exercise the rate-making function, to ask for a reconsideration of that proposition. In this connection the appellant calls attention to the fact that by the charter of the city twenty-five per cent of the electors may recall a member of the council and require him again to stand for election. Nevertheless, he takes part in the rate-making function under his personal responsibility as an officer, and it cannot be presumed, as matter of law, that the

keener sense of dependence upon the will of the people, which this feature of his tenure of office brings to him, will distort his judgment and sense of justice. It would be conceivable, of course, that the members of the legislature themselves might be subjected to the same process of recall, but it hardly would be contended that that fact would lessen the legislative power vested in them by the constitution and laws of the State. The charter of the city also contains a provision that upon petition of fifteen per cent of the voters of the city any ordinance proposed must be submitted to the people and may be by them adopted. It is said, therefore, that the power of rate regulation might be, in this manner, exercised directly by the electorate at large. It may well be doubted whether such a result was contemplated by the legislature. There are certainly grave objections to the exercise of such a power, requiring a careful and minute investigation of facts and figures, by the general body of the people, however intelligent and right-minded. But the ordinance was not adopted in this manner in this case, and it will be time enough for the courts of the States and of the United States to consider, when that is done, whether the objections only go to the expediency of such a method of regulation or reach deeper and affect its constitutionality.

Passing the questions of power, the appellant contends that it was denied the equal protection of the laws, because, contemporaneously with the fixing of rates for it, different rates were fixed for another telephone company doing business within the city. The only information we have on the subject is in the allegations of the bill, that a competitor of the complainant engaged in like business was allowed to charge for telephone service sums greatly in excess of those prescribed by the ordinance, and that these rates discriminated against the complainant and deprived it of the equal protection of the laws. An important question is thus suggested, but we think the allegations are so vague that we cannot pass upon it. Whether the two companies operated in the same territory,

or afforded equal facilities for communication, or rendered the same services does not appear.  For aught that appears, the other company may have brought its patrons into communication with a very much larger number of persons, dwelling in a much more widely extended territory, and rendered very much more valuable services.  In other words, a just ground for classification may have existed.  Every presumption should be indulged in favor of the constitutionality of the legislation.  In *Sweet* v. *Rechel*, 159 U. S. 380, 392, it was said: "But in determining whether the legislature, in a particular enactment, has passed the limits of its constitutional authority, every reasonable presumption must be indulged in favor of the validity of such enactment.  It must be regarded as valid, unless it can be clearly shown to be in conflict with the Constitution.  It is a well settled rule of constitutional exposition that if a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed."

It is to be taken into account in considering this, as well as other questions, that the appellant has declined to furnish to the council facts within its knowledge which would enable the council to exercise their powers intelligently and justly, and that there is no suggestion in the case at bar that the rates actually fixed were so low as to operate as a practical confiscation of property.

For the foregoing reasons we are of the opinion that the action of the court below in sustaining the demurrer was correct, and the decree is

*Affirmed.*