8273

CHARLESTON CONSOLIDATED RAILWAY AND LIGHTING CO. v. CITY COUNCIL OF CHARLESTON.

CITIES AND TOWNS—ORDINANCES—CORPORATIONS—LIGHTS.—Under the ordinance granting a franchise to the Charleston Consolidated Railway and Lighting Co. to furnish light, heat and power to the city of Charleston and its citizens, the power is reserved to the city council to fix rates and the acceptance by the company of this franchise grants to the city council that power.

The State by enacting the statute, 27 Stats., 551, providing for a commission to fix rates in the cities and towns of the State, did not thereby take away from the city this power, but it remains until a commission appointed under the statute fixes rates for the city, unless the rates fixed by the city council under the franchise contract are unreasonable.

Petition before Mr. Justice Woods, at Chambers, by the Charleston Consolidated Railway and Lighting Co., for a temporary injunction restraining the city council from enforcing certain rates fixed by it for light, heat and power.

*Messrs. B. A. Hagood, W. C. Miller* and *J. K. P. Bryan,* for petitioner.

July 29, 1912.

MR. JUSTICE WOODS.   In this action for injunction to restrain the city council of Charleston from enforcing an ordinance fixing the rates to be charged by the Charleston Consolidated Railway and Lighting Company for light, heat and power, the question now to be decided is, whether a temporary injunction should be granted restraining the city council from enforcing the ordinance pending the hearing of the cause by the Supreme Court.

By resolution, dated 9th of April, 1910, the city council of Charleston granted separate franchises to the Charleston Edison Light and Power Company, the Charleston Gas Light Company, and Charleston Consolidated Railway, Gas and Electric Company, allowing these corporations, their successors and assigns, the use of the streets of the city for the erection of poles and other appliances "necessary or proper for the efficient furnishing of light, heat and power to the city and citizens of Charleston."   The franchise was limited to the period of thirty-seven years from 23d of March, 1910.   These corporations afterwards leased all of their property, including the franchises, to the petitioner,

the Charleston Consolidated Railway and Lighting Company. The resolution granting the franchise contained the following sections:

Section 4. "Provided, always, and this franchise and permission is given upon the express understanding and provision that the several grants and franchises herein made are expressly subject to the Constitution and laws of the State of South Carolina, and are to be so understood and accepted by the said mentioned companies; that is to say, the foregoing grants and franchises are only and so far as the city council has the right and may lawfully grant the same, and that the said respective companies shall indemnify and save harmless the said city council from all suits, actions, claims and damages arising from the exercise by said companies of the rights herein given, or any part thereof.

Section 5. "All and above mentioned grants and franchises and every part and portion thereof, are subject to all the ordinances, rules and regulations of the city council of Charleston now existing, or which may be hereafter adopted, governing the construction, erection, conduct, management of, and rates charged for light, heat and power furnished to the city and citizens by all the above mentioned companies, and also subject to the right of the city council to modify or change the rules and regulations herein provided or contained in the general ordinances of the city council."

On October 10, 1911, the city council, under this resolution, fixed the charges to be made for gas and electricity, and the petitioner complied with the prescribed schedule. The arc lights for the streets were supplied, however, under a special contract with the city, running from July 1, 1908, to July 1, 1912. On June 11, 1912, the city council by ordinance provided for a material reduction of the charges for gas and electricity furnished the city and private con-

sumers, the reduction to go into effect at the expiration of the special contract for arc lights, July 1, 1912.

In maintaining that the city council had no authority to fix the rates to be charged for gas and electricity by the ordinance of June 11, 1912, the petitioner's counsel lay down in ·substance these propositions: First, the power to fix compulsory rates to be charged by a public service corporation is a power belonging to the State as a sovereign; and the State has never delegated that power to the city council of Charleston. Second, even if the charter conferred such power on the city council it was withdrawn by the statute of 1912, providing for the regulation of rates by a commission. Third, if the power to fix the rates to be charged by the petitioner was acquired by the city council under the agreement to that effect contained in the franchise, that agreement was also abrogated by the statute of 1912. Before entering upon the discussion, it may be well to remark that as the franchise in this case was not exclusive, the act of 1902 (23 Stats., 1039), providing for exclusive franchises for furnishing light and water to cities and towns and the conditions on which they may be granted has no application.

The first proposition is no doubt sound, but in accepting it an important distinction is to be observed between power to fix by compulsion the rates to be charged by a corporation acting under a franchise which confers on the city council no power to fix rates, and power to fix rates contracted for by the city council in a franchise granting the use of the city streets or other privileges.

The following rule, stated in 1 Dillon on Municipal Corporations, section 89, was adopted in *Luther* v. *Wheeler*, 73 S. C. 83, as that supported by unbroken authority: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or inci-

dent to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the Courts against the corporation, and the power is denied." The State's power to regulate by compulsion the charges of public service corporations is one of such vast and increasing importance to the public that the Courts will not attribute to the State the intention to part with it or to delegate it unless the intention is clearly and unmistakably expressed. *Home Telephone and Telegraph Co.* v. *Los Angeles,* 211 U. S. 265, 53 L. Ed. 176, 3 Dillon on Mun. Cor., sec. 1325. The numerous authorities on the subject are cited in 28 Cyc. 724. The charter of the city of Charleston, after enumerating many subjects, including streets, concerning which the city council may legislate, empowers the council to make "in general every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of said city or for preserving peace, order and good government within the same." Section 1909 of Civil Code, confers like power on the councils of all the towns and cities of the State. These general provisions concerning the management of purely municipal affairs do not express an intention to confer on the municipality the State's power of fixing rates to be charged by public service corporations. Hence, if the petitioner were operating under a State or municipal franchise containing no agreement on the subject the city council would have no power to fix the rates to be charged.

But, on the other hand, the general control of the streets conferred on the council does carry with it the power to grant a franchise for the use of the streets for a purpose beneficial to the municipal public, on such conditions as the council may see fit to impose, including the condition that the council may fix the rates, and when the public service corporation accepted the franchise it submitted to and was

bound by the conditions. The principle is recognized in *Southbound Ry. Co.* v. *Burton,* 67 S. C. 515, 46 S. E. 340. The cases on the subject are collected in 28 Cyc. 866, 876, 880.

This rule seems too obvious for extended discussion. Indeed, the petitioner does not deny that the contract embodied in the franchise resolution was valid and binding in all its parts when it was entered into and that it conferred on the city council the right to fix rates. But the position taken is that the agreement between petitioner and the city council that the latter should regulate the rates was made subject to the State's sovereign power to assert its control over the rate to be charged by public service corporations, and that the State has exercised that power by the statute of 1912, providing for a commission on which was conferred the power, and has thus destroyed the right to fix rates conferred on the council by the franchise contract.

It is true that the franchise was granted and accepted in view of the State's power to regulate the rates to be charged, and it may be that the State could by statute supplant any rate fixed by the council under the contract. *Spring Valley Water Co.* v. *Schottler,* 110 U. S. 347, 28 L. Ed. 173; *Home Telephone and Telegraph Co.* v. *Los Angeles, supra; Louisville & Nashville R. R. Co.* v. *Motley,* 219 U. S. 447, 55 L. Ed. 297. Taking the view most favorable to the petitioner and assuming that the State has reserved that power, I think it clear that until the commission has exercised its power to fix a different rate that provided by the contract stands. The statute relied on by the petitioner is that in 1910 (26 Stats., 564), amended in 1912 so as to include the county of Charleston (27 Stats., 551). Sections 1 and 2 are as follows:

Section 1. *"Be it enacted* by the General Assembly of the State of South Carolina, That there shall be created a public service commission, of three reputable and competent citi-

zens of this State, to be appointed by the governor, by and with the consent of the senate, who shall be authorized to fix and establish in all cities of this State, now or hereafter incorporated under any general or special law of this State, maximum rates and charges for the supply of water, gas or electricity furnished by any person, firm or corporation to such city and the inhabitants thereof, such rates to be reasonable and just.

Sec. 2. "That upon complaint in writing of twenty or more citizens to the mayor or council of such city, that any person, firm or corporation is charging an unjust or unreasonable rate for water, gas or electricity, furnished by the same, the said city, mayor or council may request the public service commission to summons such person, the members of such firm or the officers of such corporation to appear before them, with their books relating to such matters, when such examination shall be made as may be necessary to determine whether or not the said rates are unjust or unreasonable; and if upon such examination the said public service commission shall determine that the said rates are unreasonable or unjust, and it shall be their duty to fix such rates to be paid for water, gas or electricity as they may deem to be just and reasonable: *Provided,* That in case the said public service commission shall fix unjust and unreasonable rates the same may be reviewed and determined by the Circuit Court of the county in which such city is located."

Giving the broadest meaning and full force to the statute, it empowers the commission to make a maximum rate lower or higher than that which it may find fixed by the public service corporation itself or by some agency which has fixed the rate under the authority of the corporation. Until the commission acts the power of the corporation to provide its rates is unhampered by the statute. If there had been no contract with the city council with respect to rates, and the Charleston Consolidated Railway and Lighting Com-

pany had given notice on June 11, 1912, that after July 1, 1912, it would charge certain rates for its service, those rates would have been legal until the commission had prescribed different rates. The rates fixed by the city council, under the express authorization of the Consolidated Railway and Lighting Company, stand on precisely the same footing as if the company itself had fixed them. Instead of retaining the right to prescribe its own charges for its service, the company, as the sole consideration for a very valuable franchise, appointed the city council to take its place in the exercise of the right. It is no ground for the repudiation of the appointment and authorization that the State has asserted its right to determine whether the rates fixed under the contract are just and reasonable. It is important to observe that there is no allegation in the complaint that the rates prescribed by the city council are unreasonable. Nor is there any claim that the contract was invalid because unreasonable and oppressive in that it gave the city council absolute power in a matter in which it was an interested party. The members of the city council have no personal interest but act on their responsibility as public officials and the presumption is that they will act justly and without prejudice. *Spring Valley Water Co.* v. *Schottler, supra; Home Telephone and Telegraph Co.* v. *Los Angeles, supra.*

The argument in support of petitioner's claim was presented with great ability, orally at the hearing and afterwards in writing. Large interests are involved and if petitioner's contention should be ultimately sustained much loss would be entailed by a refusal to grant the injunction. Under these conditions if I had a serious doubt it would be resolved in favor of the petitioner and the injunction granted. But for the reasons stated, the matter seems plain to me beyond all doubt, and the injunction must be refused.

It is therefore, ordered, that the application for the temporary injunction be refused, and that the restraining order heretofore granted be revoked.

It is further ordered, that the petitioner credit each consumer who maintains a current account the excess charged or collected for light, heat or power since July 1, 1912, over the rates fixed by the city council to go into effect on that day, and that in cases where the account has been closed that the petitioner pay such excess by check delivered in person or mailed to the consumer.