Jones, J.,
dissenting.
I find it impossible to concur in the judgment. The municipality seeks to avoid the jurisdiction of the public utilities commission of the state because the original franchise ordinance contained a stipulation subjecting the utility “to the right of the city to regulate the price of natural gas from time to time, as provided by law.”
This ordinance was passed December 26, 1905, *338 The legislative grant to the municipality limited the contractual period to ten years. After the ten-year period the city by ordinance attempted to impose a compulsory rate of service upon the grantee, ignoring the ad interim legislation, which had in the meantime placed the control of rate regulation in the hands of the public utilities commission.
1. The original ordinance of 1905, to which the grantee gave its statutory assent, reserved to the city the right to regulate the price of natural gas from time to time, as provided by law. This could only mean as provided by law in force at the time the regulation was to be made; otherwise this provision would be meaningless. Before the new reducing rate ordinance of August 20, 1917, was passed, the legislature had-in the meantime provided by law the method by which the price of natural gas should be established. When the city attempted to enforce its unilateral and compulsory rate provision in its new ordinance it violated its original contract made with the utility.
2. If it is assumed that this contract was for a longer period than ten years, the answer to that contention is that the municipality had no legislative authority to make it.
Sections 3982 and 3983, General Code, which were in force at the time the original ordinance was adopted, granted the only power the municipality had touching rate regulation. The first section delegates the power to city councils to regulate, and the second section provides for the contractual relation between the city and company, which shall not extend beyond a period of ten *339 years. Under these sections neither the city nor the utility had any authority to contract as to the price of gas for a longer period.
In construing a similar section relating to price regulation this court held in the case of City of Wellston v. Morgan, 59 Ohio St., 147, as follows: “Where a statute gives power to a municipal corporation to contract for the lighting of its streets and other public grounds for a period not exceeding ten years, the conclusive implication is that such corporation is forbidden to contract for a longer period.”
In construing the grant of legislative power in the two code sections noted, in the case of Logan Nat. Gas & Fuel Co. v. City of Chillicothe, 65 Ohio St., 186, the following proposition is stated in the syllabus: “A city council has no power under Revised Statutes, Sections 2478 and 2479 [now Sections 3982 and 3983, General Code], to compel a gas company, without its assent to the ordinance, to furnish gas in a manner and at a rate entirely at the option of the consumer.” And on page 206 the court say: “It is also provided that if the gas company assent to such limitation in writing it then becomes a binding obligation on both the city and the company for ten years and no more. This is the extent of the authority granted to the council, and no other or different power is either expressed or implied. ' When, therefore, the council undertakes, even in the absence of a prior ordinance, to compel the gas company without its consent to furnish gas in a manner and at a rate entirely at the option of the consumer, it not only transcends *340 the power conferred by the legislature, but it also undertakes to seize private property without due process of law.”
It must be remembered that the only power given to municipalities by Section 3983, General Code, was regulation by contract; and not a compulsory regulation. In this connection the statement of the Oregon supreme court in the case of Woodburn v. Public Service Commission, 82 Ore., 114, 127, L. R. A. (C. 1917), 98, 105, is peculiarly apt: “The right of the state to regulate rates by compulsion is a police power, and must not be confused with the right of a city to exercise its contractual power to agree with the public service company upon the terms of a franchise. The exercise of a power to fix rates by agreement does not include or embrace any portion of the power to fix rates by compulsion.”
3. Since municipalities are political subdivisions of the state and mere agents of the latter, it is within the province of the state to change its rate regulation at will before the municipality has entered into a legal and effective contract with a public utility. Before the ten-year, period of limitation had expired, and before the city had assumed to renew its status with the utility, and prior to municipal action fixing the new rate, the legislature had created a public utilities commission and vested it with sole control over coercive rate regulation. That the legislature had ample power to do this is supported by overwhelming authority, especially in view of the provisions of Section 2, Article XIII of the Constitution, which reserved to the legisla *341 ture the right to alter or repeal laws conferring corporate franchises. People, ex rel., v. Public Service Commission, 153 App. Div., 131; Richmond Co. Gas-Light Co. v. Middletown, 59 N. Y., 228; Stanislaus County v. San Joaquin C. & I. Co., 192 U. S., 201, and Home Tel. Co. v. Los Angeles, 211 U. S., 265.
4. The new rate ordinance was passed by the council of the city of Cincinnati on August 20, 1917. The city is now assuming an attitude wholly inconsistent with its former action. Prior to the passage of the new ordinance the city had expressly recognized the jurisdiction of the public utilities commission of the state to control the rate regulation of this public utility.
In the case of the City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 554, the city itself invoked the jurisdiction of the commission by adopting a resolution on February 10, 1914, requesting the commission to investigate and ascertain the value of this public utility for rate-making purposes. This proceeding was brought under Section 499-8 et seq., General Code, which authorized the commission to fix the valuation “for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities,” etc. In that case, at the instance of the city, this court rendered a judgment in its favor, modifying the order of the commission in the matter of valuation upon which rates are necessarily based.
Likewise, in the case of City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270, the *342 city also recognized the authority of the commission to deal with rates of this utility during the non-contractual period, for, after the expiration of the ten-year gas-rate contract in controversy, the city applied to the commission asking it to fix an emergency rate for this utility. It may not be amiss to say that in the opinion in the above case it is suggested that the ordinance of December 26, 1905, was not a twenty-five-year but a ten-year contract, expiring October 26, 1916, by virtue of Section 3983, General Code, and that such rate contract becomes operative “upon its acceptance by the public utility.”