**CITY OF UVALDE et al. v. UVALDE ELEC-TRIC & ICE CO. (No. 6616.)***

(Court of Civil Appeals of Texas. San Antonio. Nov. 9, 1921. Rehearing Denied Nov. 30, 1921.)

1. Electricity ⚖➾11—Compliance with contract to furnish electricity cannot be compelled after it had ceased to exist on company's noncompliance therewith.

Where city's contract with electric company provided that the contract should cease to exist if the company failed to comply with its agreement to furnish electricity to public generally at a specified rate, the company could not be required to comply with the contract after it had. raised the rate, since the contract ceased to exist when the rate was changed.

2. Municipal corporations ⚖➾57—Powers must be expressly granted or necessarily implied from statute.

Neither a municipal corporation nor its officers can do any act or make any contract or incur any debts not authorized by the statute of its creation, since the powers must be expressly granted thereby or necessarily implied therefrom.

3. Electricity ⚖➾11—City held not authorized to contract for electricity to be furnished at a certain rate.

City chartered under Rev. St. arts. 762–1096i, was not empowered to make a contract with electric company for electricity to be furnished to the city and to the residents thereof at specified rates, notwithstanding article 1018, empowering it to regulate rates, since the power to make such a contract cannot be implied from the power to regulate rates.

Appeal from District Court, Uvalde County; Joseph Jones, Judge.

Suit by the City of Uvalde and others against the Uvalde Electric & Ice Company. From judgment sustaining a general demurrer and special exceptions to the petition, plaintiffs appeal. Affirmed.

Frank E. Smith, Love & Smith, and L. Old, all of Uvalde, for appellants.

Templeton, Brooks, Napier & Brown, of San Antonio, and G. B. Fenley, of Uvalde, for appellee.

FLY, C. J. This is a suit instituted by the city of Uvalde, Jake Schwartz, D. W. Barnhill, N. F. Watkins, and Eugene Kincaid, against appellee, wherein it is alleged that in 1917 the said city entered into a contract for lighting with appellee, by the terms of which it was agreed that for ten years the city would pay appellee for 80-watt incandescent street lights at the rate of $1.30 per light per month, and appellee agreed to charge the inhabitants of the city at the rate of 17½ cents for 10 kilowatts, 14 cents for the 15 kilowatts, and all over 25 kilowatts not to exceed 12 cents per kilowatt; that this contract was evidenced, by an ordinance of the city, in which it was provided that, unless the reduction was made from the rate then being charged to those named in the ordinance, the contract would cease to exist. It was further alleged that appellee accepted the terms of the contract and did reduce the rates for lights as therein provided, and provided lights thereunder until March, 1921, when the rates were raised by appellee. The ordinance forming the contract is made a part of the petition, and section 14 thereof is as follows:

"The consideration for the granting and entering into this contract upon the part of the city of Uvalde, is that the electric light plant and ice company of the Uvalde Electric Light & Ice Company, shall not be moved out of the city limits of the city of Uvalde, and if either of said parts of said plant are moved beyond the city limits of the city of Uvalde, this contract comes to an end and the city is not under obligation to further consider it as in force, and also a further consideration for this contract and agreement is that the said Uvalde Electric Light & Ice Company, or its assigns or successors, shall reduce the rate to the public generally in Uvalde, not to exceed seventeen and one-half (17½) cents for the first ten kilowatts; for the next 15 kilowatts not to exceed fourteen (14) cents; and all over twenty-five kilowatts not to exceed twelve (12) cents per kilowatt, and a failure to comply with such reduction will cause this agreement and ordinance to cease to exist."

Appellants sought to restrain appellee from raising the rates for lights higher than the rates named in the ordinance for the general public. The court sustained a general demurrer and special exceptions to the petition.

There was no allegation that the higher rates being charged by appellee were excessive or exorbitant, the sole ground upon which the injunction was sought being that appellee had contracted to furnish certain lights at certain rates and was demanding higher rates. This petition is assailed on the grounds that the ordinance does not purport, on its face, to be a contract binding on the appellee to keep the rates therein provided for the public in force for the period of ten years; that the city of Uvalde had no power to make such contract, being incorporated under the general law which gives no authority to contract with reference to light rates, but merely to regulate them; that the contract is in violation of section 17, art. 1, of the state Constitution, and although the contract be one for a ten-year lighting for the public, the effect of its violation, by the terms of the contract, would not be to annul that part of it relating to street lights.

[1] The only reference to any time that the contract should exist is in the caption or

preamble to the ordinance, wherein it is stated:

"An ordinance, in the nature of and creating a contract with the Uvalde Electric Light and Ice Company, for a period of ten years from and after November 1, 1917, for better lighting the city of Uvalde, Texas," etc.

There is in that preamble no reference whatever to lights for the citizens, but all of it is directed to the lighting of the city. No mention is made of rates for lights for the citizens except in section 14, where it is stated that the consideration for the contract is that the plant is not moved from the city and lights reduced to a certain rate for the "public generally," and it is stated that—

"A failure to comply with such reduction will cause this agreement and ordinance to cease to exist."

If the contract was a valid one, by its very terms it ceased to exist the very moment appellee raised its rates to the "public generally," for at that very moment appellee failed "to comply with such reduction." This proposition is too plain for argument. The only penalty provided in the contract was as to a failure to comply with a reduction of the rates to the general public. If that be true, there could be no foundation for the issuance of an injunction to compel appellee to comply with a contract which was defunct by its very terms. The contract seemed to contemplate that appellee might remove from the city and might disregard the reduction of its rates to the public, and the only penalty provided was the annulment of the contract.

[2] The city of Uvalde is chartered under the provisions of title 22, art. 762, as amended in 1919 (Acts 36th Leg. c. 66), to and including 1096i, Revised Statutes of Texas, and all the power and authority lodged in cities, towns, and villages of the class under consideration must be found in the statutes of their creation. When the powers are doubtful, they are held not to exist. They must be expressly granted, or necessarily implied, and neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized by the statute of its creation. Dillon, Mun. Corp. §§ 237, 238, and 239.

[3] The statute gives no authority to cities and towns chartered under its provisions to contract for lights; the only authority given cities of the class under consideration is found in article 1018, which is the power of regulation of the rates and compensation to be charged by all water, gas, light, and sewer companies using the streets and public grounds of the city. Article 1025 declares extortionate and unreasonable rates charged by public utility companies unlawful, and district courts are given full power to regulate, prevent, and abolish the same. Article 1026 provides the method to be followed by the city in invoking the powers of the district court. No contract between public utility companies or corporations and the municipal corporation seems to be contemplated by the statute. No such contract is mentioned, and we do not think can be necessarily implied from the power to regulate rates. The Legislature, it may be inferred, was not guilty of an omission in failing to grant the power to contract, but probably deemed it wise to not grant to such municipal corporations authority to contract with public utility corporations. Undoubtedly the interests of the public are safer without the right to contract than with it.

In this instance it was attempted to contract for a fixed period of ten years, and it is admitted by appellants that no irrevocable contract could be entered into by the municipal corporation, and that the contract could be revoked at any time by such corporation, but not by the public utility company. The contract does not indicate that any franchises or rights were granted appellee in consideration of the matter to be performed by it. The consideration expressed was that it would not leave the city and would reduce cost of lights to the public generally.

It cannot be surmised that the Legislature intended to grant authority to cities chartered under the general law to contract with public utility companies, and certainly not for periods of time running through a number of administrations. The subject of such authority has been directly considered by the Supreme Court of the United States. Home Telephone Co. v. City of Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Milwaukee Elec. Co. v. Railroad Comm., 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254. In the first case cited, the city of Los Angeles was given the power to regulate telephone service and the charges therefor, and the Supreme Court said:

"This is an ample authority to exercise the governmental power of regulating charges, but it is no authority to enter into a contract to abandon the governmental power itself. It speaks in words appropriate to describe the authority to exercise the governmental power, but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement. Doubtless, an agreement as to rates might be authorized by the Legislature to be made by ordinance. But the ordinance here described was not an ordinance to agree upon the charges, but an ordinance 'to fix and determine the charges.' It authorizes the exercise of the governmental power and nothing else. We find no other provision in the charter which by any possibility can be held to authorize a contract upon this important and vital subject."

To the same effect is the decision in the case of the City of San Antonio v. San Antonio Public Service Co., 41 Sup. Ct. 428, delivered by the Supreme Court of the United States on April 11, 1921.

It may be well to note that the contract names no time as to rates for the public generally, and the petition does not allege any change in the rates for the city.

The judgment is affirmed.