CITY OF BAYONNE, PLAINTIFF, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, A CORPORATION OF NEW JERSEY, DEFENDANT.

Argued January 22, 1930—Decided January 28, 1930.

Before Justices PARKER, BLACK and BODINE.

For the plaintiff, *James Benny*.

For the defendant, *William H. Speer*.

The opinion of the court was delivered by

BODINE, J.   The complaint of the city of Bayonne, which the defendant moves to strike, alleges that under city ordinance of September 18th, 1885, the defendant's predecessor, the Jersey City and Bergen Railroad Company, laid tracks on Avenue C from First street to the Morris canal, and was obliged to pave and repair with Belgian block between the rails of its tracks and for a space two feet wide outside thereof.   Prior to August 23d, 1928, the paving along Avenue C became dangerous.   The defendant refused, upon request, to repair the same and the city incurred an expense of $80,571.88 for repaving, which it seeks to recover.

The defendant's position is that its obligation is controlled solely by chapter 129 of the laws of 1927 (*Pamph. L., p.* 243), and that whatever its duties may have been under the ordinance, the statutory enactment has changed the same and that hence there can be no recovery.   The statute, in so far as pertinent, is:

"Whenever any municipality, board or body, having authority so to do, shall pave or repave any street or highway upon which are located the tracks of any street railway company or traction company, such company shall, at the same time and at its own cost and expense, put its tracks and track structure in good operating condition under the jurisdiction and control of the board of public utility commissioners.   The obligations imposed by this act shall be and are in lieu and substitution of any and all other obligations of any such company to pave, repave or repair any street, road or highway, or to pay any part of the cost thereof except as herein provided, and may be enforced in the same manner as similar obligations are or may be enforced under the laws of this state."   We think the statute is controlling.

"Our constitution does not, like the constitutions of some states, confer upon municipalities the right to grant street franchises.   We have been careful to keep the sovereignty

of the state unimpaired and have not parceled out the sovereign powers among minor political subdivisions. Municipalities with us act solely by virtue of legislative authority and as legislative agents.

"The powers of municipalities in the granting of franchises to street railways are to be found in the Traction act of 1893 (*Comp. Stat., p.* 5021), and the act of 1896 (*Comp. Stat., p.* 5040). They are limited to giving consent to the construction, operation and maintenance of the street railway, the location of tracks, and imposing lawful restrictions. "* * * They nowhere expressly authorize the municipality to contract; they nowhere declare that the consent and acceptance constitute a contract. Section 32 merely declares that the consent and acceptance shall have the 'force and effect' of a contract. This language would be unnecessary if the consent and acceptance were in fact a contract, in the full sense of the word, for a contract necessarily has such force and effect. It must be because the consent and acceptance are in the nature of municipal legislation rather than of private agreement that the legislature thought it necessary to add that they should have the force and effect of a contract." *Atlantic Coast Electric Railway* v. *Public Utility Board,* 92 *N. J. L.* 168, 170.

This view also finds support in the decision of the Supreme Court of the United States. Mr. Justice Butler, saying in *Railroad Commission of California* v. *Los Angeles Railway Corp.,* 280 *U. S.* 145, 153:

" 'The surrender, by contract of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. * * * The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for that purpose is required.' And dealing with the charter provision there relied on by the company, the court said (211 *U. S.* 274; 29 *Sup. Ct.* 52) : 'The charter gave to the council the power "by ordinance * * * to regulate telephone service and the use of telephone within the city * * * and to fix and determine the charges for

telephones and telephone service and connections.' " This is an ample authority to exercise the governmental power * * * but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement.' "

The legislature has the power to provide and has provided the sole method controlling the pavement, repavement and repair of that portion of the streets and highways used by street railways. The act of 1927 completely supersedes the provisions of the ordinance and governs the liability of the street railway under the circumstances.

However, it appears that while the ordinance calls for paving and repair of a space on the highways between and contiguous to the rails, the city has repaved the street and the space between and contiguous to the rails. The case is, therefore, controlled by *Jersey City* v. *Public Service Railway Co.*, 101 *N. J. L.* 341, where Chief Justice Gummere said:

"The single question involved in the determination of this litigation is whether the obligation on the part of the railway company to keep the pavement between its rails and for a space of two feet on the outside thereof in good repair, at its own expense and according to the requirements of the governing body of the municipailty, imposes upon it the duty of paying a proportionate part of the cost of a new pavement whenever, in the judgment of the municipal authorities, it is to the interest of the municipality that such improvement should be made. This question is not a novel one in this court. In *Dean* v. *Patterson*, 67 *N. J. L.* 199, the Supreme Court held that the provision of an ordinance requiring a street railway company to keep and maintain the portion of the street inside its rails, and for a designated distance outside of them, in good and sufficient repair, did not carry with it the obligation to pay a proportionate part of the expense of repaving, and this conclusion was approved, on review, by this court. 68 *Id.* 664. In the later case of *Freeholders* v. *Jersey City, Hoboken and Paterson Street Railway Co.*, 85 *Id.* 179, the matter presented for adjudication was essentially the same."

The motion to strike the complaint will be granted.