## ROGERS PARK WATER COMPANY *v.* FERGUS.

### ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 56. Argued and submitted October 31, 1900.—Decided March 25, 1901.

So far as the contentions in this case are the same as those passed upon in *Freeport Water Company* v. *Freeport City, ante,* 587, and in *Danville Water Company* v. *Danville City, ante,* 619, they are governed by those cases.

A governmental function in a statute granting powers to a municipal corporation cannot be held to have been granted away by statutory provisions which are doubtful or ambiguous.

There is no complaint in this case that the rates fixed by the ordinance of 1897, passed by the city council of Chicago, were unreasonable; and as the plaintiff in error relies strictly on a contractual right, and as it has no such right, the judgment below is affirmed.

THIS is a petition for a writ of mandamus which was brought by the defendant in error on the 13th of December, 1897, in the circuit court of Cook County, State of Illinois, against the plaintiff in error, to compel it to furnish him water at rates fixed by an ordinance enacted by the city of Chicago.

The defence is that such ordinance impairs the obligation of the contract which plaintiff in error claims to have with the village of Rogers Park before its annexation to the city of Chicago, as hereinafter mentioned.

The village of Rogers Park was from November 12, 1888, and until April 4, 1893, a municipal corporation organized un-

der the laws of Illinois. At the latter date it was annexed to the city of Chicago.

The Rogers Park Water Company, plaintiff in error, was a corporation, incorporated about the 24th of January, 1889, under the laws of Illinois, to construct and operate a system of waterworks in the village of Rogers Park, and to acquire such property and exercise the powers necessary thereto.

The company constructed and operated a system of waterworks in said village, and the premises of the defendant in error were connected thereto and supplied with water therefrom. The rates for such water under the ordinance of the city of Chicago were $8.72, payable in advance, for the current half year, from November 1, 1897, to May 1, 1898. Those rates were tendered to the company, and a supply of water demanded of it. The company refused to comply, demanding $13.50 for such supply, claiming that sum under section 12 of an ordinance of the village of Rogers Park before its annexation to Chicago, and which ordinance empowered the construction of the waterworks system.

The contract, which plaintiff in error claims, is based on that ordinance. It was passed November 12, 1888, and was entitled "An ordinance to provide for a supply of water to the village of Rogers Park, Ill., and its inhabitants, contracting with H. E. Keeler, his successors and assigns, for a supply of water for public use, and giving the said village of Rogers Park, Ill., an option to purchase the said works."

It was provided that in consideration of the public benefit to be derived therefrom the village of Rogers Park, Illinois, granted the exclusive right and privilege for a period of thirty years from the time the ordinance should take effect "unto H. E. Keeler, his successor and assigns, of erecting, maintaining and operating a system of waterworks in accordance with the terms and provisions" of the ordinance. There was a grant of the use of the streets and alleys for mains and conduits, and power given to extend the system to new territory, if any should be acquired by the village. There were provisions prescribing the character of the system to be constructed, and that the village should pay "an annual rental for fire protection, for

less than five miles of mains within the corporate limits of said village, for the aforesaid period of thirty years, at the rental rate of five hundred and seventy-five ($575) dollars for each mile of main, to be payable semi-annually." There were also provisions for payment of taxes by the company, the flushing of sewers, and the maintenance of fountains, for the supply of water to the inhabitants, the quality of water and the manner of the supply before prescribed, and for the acceptance in writing by the company of the terms of the ordinance. Provision was also made for the purchase of the system by the village.

Section 12 was as follows:

"The said grantee or assigns shall charge the following annual water rates to consumers of water during the existence of this franchise, and they shall have the right at any time to insert a water meter into the service pipe of any consumer and to charge and collect from him at meter rates, provided that in such case the minimum annual rate paid by any one consumer shall be five dollars."

Then follow the rates for the particular purpose for which the water might be used.

Section 13 provided for the levy of a tax to meet the payments stipulated by the ordinance, which should be irrepealable.

Section 14 was as follows:

"Within sixty days after the passage of this ordinance said H. E. Keeler, his successors and assigns, shall file with the village an acceptance of the same, which acceptance, duly acknowledged before some officer duly authorized to administer oaths, shall have the effect of a contract between the village and said H. E. Keeler, his successors or assigns."

The plaintiff in error is the assignee of Keeler.

The plaintiff in error claimed in its answer that said ordinance of the village of Rogers Park constituted a contract with plaintiff in error by which it had the right to charge the rates contained in section 12, and that the ordinance of the city of Chicago reducing their rates impaired such contract and violated not only the constitution of the State of Illinois, but also

violated section 10, article 1 of the Constitution of the United States, as well as the Fourteenth Amendment.

One of the defences of the plaintiff in error was that the premises of defendant in error were connected with the system by reason of his written application; which application was accepted and became a contract. That defence, however, is not made in this court, and further reference to it is omitted.

There was a demurrer filed to the answer of the plaintiff in error, which set up its defences under the Constitution of the United States. The demurrer was sustained. Certain issues of fact were made on other pleadings, upon which there was a trial by jury, resulting in a verdict for petitioner and judgment on the verdict. The judgment was affirmed by the Supreme Court of the State, 178 Illinois, 571, and this writ of error was sued out. The assignments of error present constitutional questions only.

*Mr. Newton A. Partridge* for plaintiff in error.

*Mr. Jesse B. Barton,* for defendant in error, submitted on his brief.

MR. JUSTICE McKENNA, after making the above statement, delivered the opinion of the court.

At the time of the passage of the ordinance in November, 1888, by the village of Rogers Park, counsel for plaintiff in error says "two general acts were in force in Illinois, which related to the power of municipalities to pass ordinances for waterworks to be built and operated by private enterprise." The first is as follows:

"An act entitled 'An act to enable cities, incorporated towns and villages to contract for a supply of water for public use, and to levy and collect a tax to pay for the water so supplied.' Approved April 9, 1872." In force July 1, 1872. Laws, 1871–2, p. 271. This title is as amended by act approved June 26, 1885, in force July 1, 1885, p. 64.

"SEC. 1. Be it enacted by the People of the State of Illinois,

represented in the General Assembly, That in all cities, incorporated towns and villages where waterworks have been or may hereafter be constructed by any person or incorporated company, the city, town or village authorities in such cities, incorporated towns and villages may contract with such person or incorporated company for a supply of water for public use for a period not exceeding thirty years." As amended by act approved June 26, 1885. In force July 1, 1885, Laws, 1885, p. 64.

"Sec. 2. Any such city or village so contracting may levy and collect a tax on all taxable property within such city or village to pay for the water so supplied."

The second, passed one day later and taking effect on the same day as the first, was the cities, villages and towns act. The title to that act and the article and section bearing upon this case are as follows :

"An act entitled 'An act to provide for the incorporation of cities and villages.' Approved April 10, 1872. In force July 1, 1872. Laws of 1871–2, p. 218.

"Article X, Section 1. The city council or board of trustees shall have the power to provide for a supply of water by the boring and sinking of Artesian wells, or by the construction and regulation of wells, pumps, cisterns, reservoirs or waterworks, and to borrow money therefor, and to authorize any person or private corporation to construct and maintain the same at such rates as may be fixed by ordinance, and for a period not to exceed thirty years; also to prevent the unnecessary waste of water; to prevent the pollution of the water, and injuries to such wells, pumps, cisterns, reservoirs or waterworks."

These acts are urged to establish the power in the village of Rogers Park to grant to the plaintiff in error the right to charge and collect for thirty years the rates prescribed by the ordinance of November, 1888. We have passed on a similar contention in *Freeport Water Co.* v. *Freeport*, and in *Danville Water Co.* v. *Danville*, and we need not repeat the reasoning. Besides, it is disputable if the ordinance of 1888 justifies the claim of plaintiff in error. The Supreme Court of the State held that it did not. A strict construction must be exercised. The contract claimed concerned governmental functions, and

such functions cannot be held to have been stipulated away by doubtful or ambiguous provisions.

Section 1 of the ordinance recites "that in consideration of the public benefit to be derived therefrom, the village of Rogers Park, Illinois, hereby grants the exclusive right and privilege for a period of thirty years . . . unto H. E. Keeler, his successor or assigns," of erecting and maintaining a system of waterworks. The use of the streets was also granted for such purpose.

Section 3 recites "in consideration of the public benefits and the protection of property resulting from the construction of said system of waterworks," the village agrees to pay a certain annual rental proportional to the length of the mains.

The grantee, on his part to pay "all municipal and village taxes," (sec. 3,) "in consideration of the rentals herein agreed to be paid and in consideration of the rights and privileges granted" (sec. 4,) agreed to furnish the village and the residents thereof an adequate supply of water. Failing to supply water for a year in quantity or quality stipulated, the "franchise and all their rights and privileges granted under this ordinance, and the contract entered into, shall be null and void."

If the ordinance contained any other provisions it could not be claimed that the company's charges to consumers of the water furnished them were free from regulation by the municipality if it otherwise had power of regulation. There are other provisions, and especial stress is laid upon them. Section 12 provides as follows:

"The said grantee or assigns shall charge the following annual water rates to consumers of water during the existence of this franchise, and they shall have the right at any time to insert a water meter into the service pipe of any consumer and to charge and collect from him at meter rates, provided that in such case the minimum annual rate paid by any one consumer shall be five dollars."

Then follows an enumeration of uses and the rates for such uses. There is a schedule for meter rates, and also the following provision:

"Rates for all other purposes that may be applied for, not

named in the foregoing schedule of maximum rates, will be fixed by estimation or meter, at the option of the grantee or assigns."

, This, it will be observed, is the language of command, not of contract; of limitation on power, not a bargain giving power. The right to charge the inhabitants of the village for the water supplied to them resulted from the right to construct and maintain the system. Section 12 was a regulation of the right. There is no stipulation that it will be the only instance of regulation; that the power to do so is bartered away, and that the conditions which determined and justified it in 1888 would remain standing, and continue to justify it through the changes of thirty years. It would require clearer language to author-ize us in so holding. The predecessor of the plaintiff in error was given the monopoly of the supply of water. That might be necessary to induce the investment of capital, and for its security the obligation of a contract might be sought and given. There was no such inducement for an unalterable rate. A reasonable rate the law assured, and assured even against governmental regulation. And the statute of 1891, which is especially complained of, assures it. By section 1 of that statute municipalities are " empowered to prescribe by ordinance maximum rates and charges," and if unreasonable rates and charges be fixed they may be reviewed and determined by the circuit court of the county in which the municipality may be. There is no complaint in this case that the rates fixed by the ordinance of · 1897, passed by the city council of Chicago, were unreasonable. Plaintiff in error relies strictly on a contractual right. We think it has no such right, and the judgment of the Supreme Court is

*Affirmed.*

Mr. Justice White, with whom concurred Mr. Justice Brewer, Mr. Justice Brown and Mr. Justice Peckham, dissenting.

This case, in my opinion, should be controlled by the same principles which it seemed to me should have been applied in

the case of the *Freeport Water Company* v. *Freeport City, ante,* 587, just decided.   The only difference of fact between that and the present one is this : In the *Freeport* case the matter involved was the power of the city to contract and to fix the rates to be paid for a supply of water for public use during the designated period.   Here the question is whether the village of Rogers Park had power to contract for the construction and maintenance of waterworks, and in such contract to fix the rates to be charged for the water to be supplied to private consumers during the contract period.

The authority under which the contract in question was made was the two acts of the legislature of the State of Illinois considered in the *Freeport* case, that is to say, the acts of April 9, 1872, and April 10, 1872.   There is this difference, however: The act of April 9, 1872, was amended on June 26, 1885, (Public Laws of Illinois, 1885, p. 64,) so as to authorize contracts for a supply of water as therein stated to be made with private individuals as well as private corporations.   Thus authority existed to contract with individuals under both acts.   The ordinance passed by the village of Rogers Park and the contract made as fully recited in the opinion of the court was for the erection, maintenance and operation of waterworks, the extension of the system as might be required, the payment of an annual rental by the village for public hydrants, and the establishment of the rates to be paid by private consumers during the contract period.

The language of the legislative act conferring authority to fix the rates, it seems to me, clearly sanctions the establishment by contract of the rates for private use as it did those to be paid for the public supply.   The fixing of rates is plainly generic and of necessity embraced those rates which were to be paid for the supply of water which the statute authorized the village to contract for.   So far as the power of the legislature to authorize a contract for designated rates for a stipulated time is concerned, I can see no difference between fixing the rates for the public and those for the private supply during the authorized time.   This in my judgment is conclusively settled by the authorities to which reference was made in my dissent in the

*Freeport* case. Especially is this shown by the ruling of the court in *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558, 569, where it was, in effect, decided that a contract, made by a municipality with a water company that existing rates to private consumers should not be reduced during the life of the contract was a valid stipulation, provided that the action of the city was previously sanctioned or was subsequently ratified by legislative authority.

The only question then remaining to be examined seems to me to be whether the particular contract made by the village of Rogers Park, considered in this case, fixed the rates for private consumers for the period of the contract. And this only involves an examination of the contract for the purpose of determining its import. Of course, it is conceded, under the rule of construction stated by me in my dissent in the *Freeport* case, that if doubt arises from an analysis of the provisions of the contract, that doubt must be solved against the water company and in favor of the municipality. But it is submitted that there can be no doubt, from a consideration of the text of the contract, that it fixed the rates to be paid by private consumers during the life of the contract. The ordinance established in detail a tariff of specific water rates for private purposes, embracing an enumeration which would seem to include every variety of use. It conferred upon the contractor the right, if he did not choose to charge these rates, to insert in the connection a water meter, and to charge for the water supplied at meter rates instead of at the aggregate sum otherwise fixed. The opening clause of section 12 read as follows: "The said grantee or assignee shall charge the following annual water rates to consumers of water during the existence of this franchise, and they shall have the right at any time to insert a water meter into the service pipe of any consumer, and to charge and to collect from them at meter rates, provided that in such case the minimum annual rate paid by any one consumer shall be five dollars." As I understand this language, it without doubt embodies the rates, whether fixed by the purpose for which the water was taken or by the meter measurement, and explicitly stipulates that these rates may be charged during the life of the contract. Indeed, it seems to me

impossible to conceive that the contract for the construction, maintenance and supply would have been entered into without such agreement. Can it, in reason, be said, in view of the terms of the contract, that if the water company had wished to charge more than the contract price, on the ground that an unreasonably low sum had been fixed in the contract, it would have had a right at once to ignore the contract stipulation and exact higher rates? If it cannot be, how can it be held that the city had the right at its pleasure to disregard the rates fixed in the contract? Was not the obligation of one the correlative of the right of the other? To say that the provisions of the contract constitute the language of command and not the language of contract, does not weaken or obliterate the unambiguous provisions of the agreement into which the parties entered. They were indeed, in my judgment, commands, arising from the express authority conferred upon the municipality by the legislature of the State of Illinois, sanctioned by the agreement of the parties, and protected from impairment by the Constitution of the United States.