### CITY OF BUFFALO v. BUFFALO GAS CO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1 GAS COMPANIES—METER RENTS—EVIDENCE—SUFFICIENCY.

Evidence showing that a gas company had established and enforced a service charge against consumers, based on the capacity of meters, the cost of which varied in like proportion, is sufficient to sustain a finding by the trial court that such charge was for meter rentals, and therefore a violation of section 69 of the transportation corporations law (Laws 1890, c. 566), which provides that "no gas light corporation shall charge or collect rent on its gas meters either in a direct or indirect manner."

2. SAME—REGULATION FORBIDDING CHARGE—VALIDITY.

The transportation corporations law (Laws 1890, c. 566), providing that a consumer shall be provided with a gas meter supplied by the gas company without charge, and which shall be inspected by officials designated for that purpose, is a valid police regulation.

3. SAME—DUE PROCESS OF LAW.

The transportation corporations act (Laws 1890. c. 566), providing that a gas company shall not charge, either directly or indirectly, any rental for its meters, is not unconstitutional, on the ground that it confiscates property without due process of law.

Nash and McLennan, JJ., dissenting.

Appeal from Special Term, Erie County.

Action by the city of Buffalo against the Buffalo Gas Company. From an order of the Supreme Court, affirming a judgment of the Municipal Court of the City of Buffalo, in favor of the plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

John G. Milburn, for appellant.

Charles L. Feldman and Percy S. Lansdowne, for respondent.

HISCOCK, J. The defendant, as its name implies, is a corporation in the city of Buffalo engaged in manufacturing and supplying gas. This action was brought against it to recover a penalty for its alleged violation of section 69 of the transportation corporations law (Laws 1890, c. 566), which provides that "no gas light corporation in this state, shall charge or collect rent on its gas meters, either in a direct or indirect manner." The trial court found that it had violated such law, and hence the judgment against it.

The questions presented here for our consideration upon this appeal are whether, first, the evidence fairly warranted the trial court in finding as it did; and, second, whether if it did so warrant it, the

law providing the penalty for such act is constitutional. Our conclusions lead us to an affirmative answer to each question.

The defendant was created through the merger of three gas companies formerly existing in Buffalo. These former companies had bound themselves by contract with the municipality to supply gas to individual consumers at a fixed rate. The defendant, during the years of its existence before this action was brought, observed these same rates. It was engaged in supplying gas generally throughout the city of Buffalo, and within the limitations fixed by law was bound to accommodate any person who desired it. It is urged that many persons took gas in such small quantities as to make their patronage unprofitable. About July 1, 1901, the defendant adopted a rule which was made public through publication in the newspapers and through service of copies upon customers, which, in substance, provided that thereafter, to cover cases of the character above indicated, it would render a "minimum gas or service bill" for each meter on its books that showed no consumption during the month or consumption less than a specified amount. As indicated by the evidence, this meant that, in case of consumers who did not use up to a certain limit of gas per month, a charge would be made outside of that fixed for the gas itself. Thereafter, and during the month of September, the defendant committed the acts which are especially made the basis of this action. It presented and collected of one Smith a bill of 50 cents, of which only 24 cents was for gas, and this extra charge the trial court finds constituted a violation such as is alleged in the complaint.

The distinct, specific issue decisive of the general question upon this branch of the case is whether such extra charge was directly or indirectly for rental of the meter, or whether, as claimed by the learned counsel for the appellant, it was a charge absolutely independent of meter rental, and designed to cover the general expense of the company in carrying the customer on its books, collecting bills, reading his meter, etc.

Assuming, simply for the sake of the argument, but not deciding, that the appellant might make such a charge for general cost of conducting business with a customer who did not take sufficient gas to pay his share of such expense, we think, as indicated, that the evidence authorized the court to find against this theory and in favor of the one advanced by the plaintiff. The charge in question having been collected after and in accordance with the rule adopted by appellant above referred to, the form and wording of the latter is very material upon this question. Commencing with the statement that it will render a service bill for certain meters, it then sets forth a schedule of the charges to be made, and which shows that said charges vary in proportion to the size of the meter. For a three, five, or ten light meter the charge was to be 60 cents gross, and this sum increased with the size of the meter until, in the case of one for 300 lights, it reached the price of $7.20 gross. The services included in the cost of conducting business, and for which it is insisted this charge might be properly made, would be the same for a small meter as for a large one. It would cost no more to carry a customer upon

the books or read his gas consumption or present his bill in the case of a large meter than in the case of a small one, and we can see no reason why, upon that basis, the variation in question should occur. It appears, however, from the evidence of one of defendant's officials, that while one of the smallest meters would cost about $5.25, the cost for larger ones would run "up into the thousands," and this at once suggests a reason why, in the absence of some law to the contrary, the defendant should charge a larger price for a large meter than for a small one. The usual rule is that the rent of anything shall be somewhat in proportion to its cost or value, and we think that the trial court, invested with the jurisdiction to draw inferences from the facts, had the right to find that this schedule of charges fixed by defendant proportioned to the size of meters had relation to their value and cost, and was intended to cover the use thereof. If this were so, there was established a violation of the act in question.

Passing to the second question, it is too well established to require a citation of authorities that the court should not lightly and without plain reason therefor hold an act of the Legislature unconstitutional. An examination of not only the section of the statute immediately involved, but of others to be read in connection therewith, discloses a well-defined theory and purpose upon the part of the Legislature in their enactments. A company engaged in manufacturing and supplying gas is engaged in a business of public interest. Its customers are the people at large, and in return for the privileges which are granted to the corporation the former are entitled, within reasonable and proper limits, to protection and safeguards. No method has been devised of measuring the quantity of gas used by a consumer so efficient as the meter. Not only is the consumer entitled to be protected against imposition by some safe method of measuring the quantity which he uses, but it is essential and necessary for the gas company itself that such measurement and test should be accurate. Having in mind these facts, the law in question in effect provides that the consumer shall be supplied with a meter, and that the same shall not only be furnished by the company without charge, but that it shall be inspected by officials designated for that purpose. The object of these provisions is very plain. They contemplate that the gas company desiring to engage in such business shall not take advantage of its customers, either by supplying an untrue meter or by making them pay for the ordinary method of determining what has been consumed. We think such provisions are clearly within the power conferred upon the Legislature to enact those laws for the public and general welfare which are ordinarily known as police regulations. People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460; Spring Waterworks Co. v. Schottler, 110 U. S. 353, 4 Sup. Ct. 48, 28 L. Ed. 173; Cotting v. Kansas City S. Y. Co., 183 U. S. 85, 22 Sup. Ct. 30, 46 L. Ed. 92; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77. In other states the right of the Legislature to legislate upon the precise lines involved here has been sustained. Louisville Gas Co. v. Dulaney, 100 Ky. 405, 38 S. W. 703, 36 L. R. A. 125; State ex rel. v. The Columbus Gas, etc., Co., 34 Ohio St. 579, 32 Am. Rep. 390. It may be conceded, as argued

by the learned counsel for the appellant, that where the Legislature, under the improper exercise of the powers in question, passes laws which amount to a confiscation of property, the courts will enjoin the penalties provided. We do not, however, think that the facts presented to us in this case at all warrant the view that it comes within the principle thus invoked.

While the law within certain limits compels the defendant to furnish gas to a would-be customer, it is not urged here that the Legislature has fixed the price at which defendant must furnish such gas. The compensation which defendant received for furnishing this commodity to the public was voluntarily fixed by agreement with the common council by defendant or its predecessors. A uniform rate was adopted. It could not have been forgotten when this was done that, as now claimed, some people would take so small a quantity of gas as to make their business, standing by itself, undesirable and unprofitable. Presumably, as a condition of securing from the municipality certain rights and privileges, a schedule of rates was adopted which, taking into account the entire business, would yield adequate returns in the way of profits. The business of defendant in the respect under consideration is not materially different from any other large one. There is probably no large manufacturing or mercantile institution which does not transact items of business so small in amount as to afford profits insufficient to meet the general expenses properly chargeable thereto. A merchant who sells an article of trivial value, delivers it, charges it upon his books, and collects the bill, has the same experience which is complained of by defendant. His profits, if at all, come through the entire volume of business, charged with the entire cost of conducting it. The rules founded upon such common experience fortify our judgment and opinion that the record in this case does not disclose any such injustice or invasion of the rights of property as to warrant us in holding that the law which stands over this action is unconstitutional and void. The judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs.

SPRING and WILLIAMS, JJ., concur.

NASH, J. (dissenting). The plaintiff recovered judgment against the defendant in the Municipal Court of Buffalo for $50, being the amount of a penalty for an alleged violation of section 69 of chapter 566 of the Laws of 1890, which provides that if any gaslight corporation in this state shall charge or collect rent on its gas meters, either in a direct or indirect manner, it shall be liable to a penalty of $50 for each offense.

The complaint alleged that the uniform price for which the defendant had furnished gas to consumers prior to 1901 was 12 cents per 100 cubic feet of gas consumed, less 2 cents per 100 cubic feet discount if paid before the 10th of the succeeding month. That one Junius S. Smith had for a long time prior to July 29, 1901, taken gas from the defendant and paid the uniform price therefor at the rate above stated, furnished to him at his place of business, No. 27

Main street in the city of Buffalo. That after July 29, 1901, and up to August 29, 1901, the defendant continued to supply gas to said Smith, and during said period he consumed 200 feet of gas, for which, at the price which had been before uniformly charged to him, he became liable to pay the defendant 24 cents, or, less the discount, 20 cents. That thereafter, and on September 1, 1901, the defendant rendered to said Smith a bill for the gas consumed as aforesaid, as follows: "Consumption 200 cubic feet gas at 12c. per 100 and service 60c. Discount 2 cents per hundred 10c. Net if paid on or before September 10, 50c." That thereafter, and on or about September 26, 1901, said Smith tendered the defendant 20 cents in payment of said bill, which was refused, and said Smith thereupon, under protest, paid to the defendant 50 cents in settlement of said bill.

It appears that the defendant gave notice to its customers that on and after August 1, 1901, it would render a minimum gas bill or service bill to consumers for the size of meter used by said Smith, which service charge would be the same as for 500 feet of gas—60 cents gross, or 50 cents net if paid on or before the tenth of the following month, or a fixed minimum charge of 50 cents a month for gas and service, which, when the gas consumed exceeded 500 feet during the month, would be absorbed in the price of the gas. It was shown on behalf of the defendant that it cost to keep a customer's name on the books of the company from $3.50 to $4 a year, which covers the expense of inspecting meters and keeping them in order, making entries in its books, making out and rendering and collecting bills.

It is urged on behalf of the appellant that the company's charge was not directly or indirectly a meter rental; that, when the company is required to install its meter and furnish gas to a customer, certain services are required in addition to supplying the consumer with gas. "It has to enter the customer on its books as a patron; to send a man to inspect the meter monthly; to enter the record of consumption; to make out and render his monthly bill; to collect it; to make entries in its books of the amount due and paid; and to keep the meter in proper order." That a charge for these services, which are rendered necessary and grow out of the relation between the parties, is something quite distinct from rent. I agree with the appellant in this contention.

In the notice to customers stating that a minimum gas or service bill would be charged, a rate was fixed varying in amount with the size of the meter, and it is suggested that it costs no more to read a meter, make out a bill, and make a monthly inspection of a 300-light meter than for a 10-light meter. We are dealing here only with the offense proved for which the penalty was imposed, and as to that we agree with the appellant's contention that it cannot be said that rent of the meter formed any part of the gas and service bill collected by the defendant.

If, however, some part of the minimum sum fixed for gas and service includes a charge for rent of the gas meter, so that it may be regarded as a violation of the statute, then we come to the question of power in the Legislature to impose the penalty for such violation,

i. e., to compel a gas company to furnish gas to a patron at less than half the cost of the service to the company. The 20 cents for the gas actually consumed was little more than half the cost of furnishing it. This patron's bill for February was 10 cents, for March nothing, and for April 10 cents. If this can be required by one, it can be by hundreds of patrons, to the serious loss of the company. The service rendered to a patron is, of course, property. And if, in a given instance, the company is required to furnish it at half its cost, and even without any compensation whatever, it would be violative of the provision of the constitution which says that no person shall be deprived of his property without due process of law, nor his property taken for public use without just compensation.

It is not intended by the opinion here expressed to deny the power of the Legislature to regulate charges for gas furnished and services rendered by gas companies to consumers, but, as said by Chief Justice Waite in the case of Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636, it is not to be inferred that the power of limitation or regulation is itself without limit, and, as pertinent to the case then before the court:

"This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretense of regulating fares and freights the state cannot require a railroad corporation to carry persons or property without reward. Neither can it do that which amounts in law to a taking of property for public use without just compensation, or without due process of law."

The judgments of the courts below should be reversed.

McLENNAN, J., concurs.