CITY OF TIPTON, Appellee, v. TIPTON LIGHT & HEATING COMPANY, Appellant.

**MUNICIPAL CORPORATIONS: Public Utility Rates—Presumption.**
1  The maximum rate fixed by a municipality for electric light or power is presumptively reasonable. (See Section 725, Code, 1897.)

**MUNICIPAL CORPORATIONS: Public Utility Rates—Meter**
2  **Charges—Legality.** A city has power to prohibit a charge for rental of electric light or power meters, as long as the maximum rate fixed by the city for electricity is reasonable without such meter charge. (See Section 725, Code, 1897.)

**MUNICIPAL CORPORATIONS: Public Utility Rates—Ordinance**
3  **Fixing Rates—Construction.** An ordinance fixing a maximum rate for electric light and power and prohibiting any charge for rent of meters impliedly declares that the rate thus fixed shall be compensatory for *each* and *every* service connected with the "furnishing" of such light and power, including meters. (See Section 725, Code, 1897.)

**MUNICIPAL CORPORATIONS: Ordinances—Penal Ordinances—**
4  **Power to Enact—Public Utility Rates.** A municipality, having authority from the legislature to enact an ordinance on a named subject-matter, may enforce obedience thereto by fine not exceeding $100 for each violation. So held in reference to an ordinance fixing public utility rates. (Section 680, Code, 1897.)

*Appeal from Cedar District Court.*—MILO P. SMITH, Judge.

WEDNESDAY, MAY 10, 1916.

THE defendant, a public service corporation, appealed from the judgment of the district court imposing a fine for the violation of a city ordinance prohibiting it from charging more than the amount fixed by an ordinance for services rendered in supplying electric light and power.—*Affirmed.*

*John T. Moffit,* for appellant.

*James C. France,* for appellee.

GAYNOR, J.—The plaintiff is a municipal corporation; the defendant, a private corporation, organized under the laws of this state and authorized to build and operate an electric light and power plant in the plaintiff city, and was, at the times hereinafter mentioned, operating an electric light and power plant in said city.

On the 13th day of September, 1913, the plaintiff city regularly adopted and promulgated the following ordinance:

"Ordinance No. 75. Being an ordinance regulating and fixing the rent or rates for electric light, and regulating the use of light and power meters or other devices for determining consumption of electric light and power.

"Be It Ordained by the city council of Tipton, Iowa:

"Sec. 1. Any persons, firm or corporation supplying electric light to the inhabitants of the city of Tipton shall charge not to exceed 10 cents per kilowatt hour therefor, and no person, firm, or corporation shall charge, exact, or receive in excess of 10 cents per kilowatt hour for electric light supplied by them to any inhabitant of said city, provided, however, that such person, firm or corporation shall have the right to collect a minimum rate of 75 cents per month for each residence or place of business using said light.

"Sec. 2. No person, firm or corporation furnishing elec-

tric light or power to the inhabitants of the city of Tipton shall charge, *exact or receive any compensation* for the use of electric light or power meters or other devices for the measuring of electric light or power.

"Sec. 3.   Any person, firm or corporation violating any of the provisions of this ordinance shall upon conviction thereof be punished by a fine of not less than $5 or more than $100.

"Sec. 4.   This ordinance shall be effective from and after Oct. 1, 1913.

"Sec. 5.   All ordinances or parts of ordinances in conflict herewith are hereby repealed."

On the 8th day of December, 1913, there was filed in the office of the mayor of the plaintiff city an information, properly sworn to, charging the defendant with a violation of said ordinance, the information being in the words and figures following:

"The defendant, Tipton Light & Heating Company, is accused of charging, receiving and exacting *meter rent* for electric light meters, for that, on or about the 6th day of December, 1913, the said defendant did, at and within the city of Tipton, Iowa, charge, exact and receive from one M. R. Jackson the sum of 20 cents, as rent for one meter or instrument for measuring electric light current for the month of November, 1913, contrary to the ordinance in such cases made and provided."

The defendant appeared by its attorney and entered a plea of not guilty.   The cause was tried and submitted and defendant found guilty as charged, and, judgment having been entered against the defendant, it appealed to the district court.   In the district court, the cause was retried and the defendant found guilty as charged, and judgment entered that he pay a fine of $50 and costs.   From this it appeals to this court, and contends:   (1) That the plaintiff city had no authority, express or implied, to prohibit the defendant company from charging a reasonable rate as meter rent;

(2) that, if the statutes expressly conferred the power to prohibit meter charges for rent, there is no authority to impose a fine or imprisonment. These are the only questions involved in this appeal which we think are proper for our consideration. The other questions raised may be disposed of under these two heads.

Section 725 of the Code of 1897 gives to cities such as this plaintiff the power to regulate the rates to be charged for services rendered by corporations such as this defendant, and reads as follows:

1. MUNICIPAL COR-
· PORATIONS:
public utility
rates: presump-
tion.

"They shall have power to require every . . . private corporation operating such works or plant, subject to reasonable rules and regulations, to furnish any person applying therefor, along the line of its pipes, mains, wires, or other conduits, with gas, water, light or power, and to supply said city or town with water for fire protection, and with gas, water, light or power for other necessary public purposes, and to regulate and fix the rent or rate for water, gas, light or power; to regulate and fix the rents or rates of water, gas and electric light or power; to regulate and fix the charges for water meters, gas meters, electric light or power meters, or other device or means necessary for determining the consumption of water, gas, electric light or power, and these powers shall not be abridged by ordinance, resolution or contract."

The right of the State to delegate to municipalities the powers therein conferred is not questioned. The right of the city to exercise these powers when delegated is not questioned. There is no claim that the provisions of the ordinance fixing the rates are unreasonable. The passage of the ordinance is a legislative act. It is presumed to be reasonable until the contrary appears. That the defendant violated the ordinance is admitted.

The first question then is: Was the passage of this ordinance a fair exercise of the delegated power of the city? The

first provision of the ordinance is not involved in this suit,
nor is the right of the city to enact the pro-

2. MUNICIPAL COR-
PORATIONS:
public utility
rates: meter
charges: legal-
ity.

visions of the first section of the ordinance in
question.

It is claimed that the city had no power,
even under this delegated authority, to pro-
hibit the exaction of compensation for the use of meters or
other measuring devices.  This question we dispose of first.

This statute gives to cities the power to regulate and fix
rates for water, gas, etc., and gives to it power to regulate
and fix charges for gas meters, etc., used for determining the
amount of water, gas, etc., consumed.  That the legislature had
power to regulate the rates and charges of corporations ren-
dering public service cannot be questioned.  That it had power
to delegate this to municipalities or local boards cannot and
is not to be questioned.  It did delegate this power by express
provisions.  By express provision the legislature has delegated
the right to regulate and fix the rents or rates that may be
charged.  In this is involved the right to fix a maximum and a
minimum rate.  In fixing these rates, due regard must be had
to the fact that these corporations are entitled to reasonable
remuneration for the services rendered.  Within this limita-
tion, the right to fix the rates is vested solely within the legis-
lative power of the city.  Courts have a right to inquire into
the reasonableness of an ordinance, and every ordinance, to
be valid, must be reasonable and just in its provisions to all
the parties to be affected by its enforcement.

No question is here made as to the reasonableness of the
ordinance in question.  The franchise of the defendant, if
any it had, is not before us.  We have no way of knowing its
provisions.  It undertook to, and was, furnishing electricity
for light and other purposes to the people of plaintiff city.
Its business brought it within the purview of the statute here-
inbefore cited.  For the services to be rendered, a maximum
charge was fixed by the first section of the ordinance.  Under
this provision, it could not charge, exact or receive anything

in excess of 10 cents per kilowatt hour for electricity supplied by them to any inhabitant of the city. A minimum rate was fixed of 75 cents per month for each residence or place of business using the light. This first section of the statute limited the right of the defendant company to charge or exact or receive anything in excess of the amount therein provided for services rendered in the furnishing of lights. It might have said in this section of the ordinance that this maximum charge shall include the use of meters. If it had said that, clearly, any charge in excess for services rendered, including the use of meters, above that provided for in the ordinance as the maximum rate to be charged, would be a violation of the provisions of that section. In the second section, it is provided that nothing shall be received, in addition to the maximum rate, for the use of meters; for it says that it shall not exact or receive any compensation for the use of meters or other devices for the measuring of light or power furnished. The whole ordinance must be read together. It all deals with one thing—the services to be rendered the inhabitants of the city, under its franchise, in the supply of electric light or power to the inhabitants of the city. The maximum rate is fixed, and this maximum rate, by the provisions of the ordinance, covers the use of meters. To illustrate: The law prohibits one dealing in a commodity from charging more than a certain fixed sum per pound; fixes a maximum rate per pound as the selling price for the commodity. To ascertain the weight, it is necessary to weigh the article. With a maximum rate for the article fixed at a definite sum, would it be reasonable to suppose that the seller could add to that fixed selling price a sum for the trouble and bother of weighing the article to ascertain its weight, and increase the cost of the article to the purchaser by the sum charged for services rendered in weighing it? To charge for the commodity the maximum price fixed, and then, under the guise of a separate charge for services, add to the price of the article to the consumer, would be indirectly accomplishing that which the law itself prohibited.

The act of the municipality in fixing the rate is purely a legislative act, done by virtue of the authority given it by the legislature. It is presumed to have been in the proper exercise of the power conferred, and the rate established by the ordinance is presumed to be reasonable, and, if attacked on the ground that it is unreasonable, the only question which the court can consider is, Will its enforcement operate to deprive the defendant of fair compensation or remuneration for the services rendered? See *Cedar Rapids Gas Light Co. v. City of Cedar Rapids*, 144 Iowa 426, and authorities cited.

The company is entitled to a fair return for the services rendered. It is not contended in this case that the maximum rate fixed in the first provision of the ordinance does not bring to the defendant, and did not bring to the defendant, a fair compensation for the services rendered by it to the inhabitants of the city. Where a maximum rate is fixed for services rendered, that rate controls and fixes the liability of the consumer to the company for the services rendered. It cannot by indirection add to the burden of the consumer beyond the maximum fixed by the ordinance. The inhibition of the ordinance goes to the act of charging or receiving more than the maximum rate provided in the ordinance itself.

As said by the Supreme Court of Alabama, in *Montgomery Light & Power Company v. Watts*, 26 L. R. A. (N. S.) 1109 (51 So. 726):

"It will not do to say that the charge fixed was only for the gas, and does not refer to the meter. The meter belongs to the company, and is placed there by it in order that it may ascertain how much gas is being consumed. . . . It may adopt any means suitable and accurate for ascertaining the number of feet consumed, and the customer cannot direct or provide what means shall be used; his only concern being that he receives the service and is not charged more than the rate fixed by law or the contract."

It must be borne in mind, in considering this question, that, whatever the contractual relations may be between the

defendant company and the city (the franchise ordinance not being before us), the company was operating under the ordinance hereinbefore set out. Presumably, the agreement of the company with the city is for the benefit of the consumers. It agrees to furnish its product at so much per cubic foot, and it follows that it must necessarily find instrumentalities with which to measure the cubic feet.

As more directly bearing upon this point, see *Capital Gas & Electric Co. v. Gaines* (Ky.), 49 S. W. 462, in which the right to charge for meters was involved. In this case it is said:

"To agree to supply gas to private consumers is, in effect, agreeing to make and deliver the gas. The amount named to be paid by the consumers is for a thousand cubic feet of gas delivered. If an account is to be kept of gas delivered, a meter is necessary; and, as the appellant is to deliver the gas at a stipulated price, it would be in contravention of the terms of the contract, as evidenced by the writing, to prove a usage which would require the payment of a sum in addition to that stipulated in it," to wit, meter rent.

See also *Louisville Gas Co. v. Dulaney* (Ky.), 38 S. W. 703, where it is said:

"The gas meter is the property of the company, and it is as necessary to the company in the measurement of its gas as are its works for its manufacture. . . . While the consumer may cause it to be inspected, and may test the accuracy of its work, his concern is only to ascertain and pay for what gas he has consumed, and cannot be called on to pay for the apparatus used in its measurement, any more than he may be made to pay for the machinery used in its manufacture. He is required to pay the legal rate for the quantity consumed, and this quantity must be ascertained by the company by some correct method. The company can only charge for the quantity it actually furnishes, and to ascertain what it furnishes it must measure it."

We cite these authorities as establishing this proposition

that the plaintiff city had a right to fix a maximum rate to be charged by the defendant company for services rendered the inhabitants of the city in furnishing to them electric light and power at a fixed and maximum rate, which, by the terms of the ordinance, included the use of meters; for the second section prohibits any extra charge for meters. The ordinance is presumed to be reasonable, and prohibits the defendant company from charging a consumer more than the maximum rate fixed. To charge and exact more than the maximum rate fixed is a violation of the inhibition of the ordinance. This we assume as the status of the case at the time it came before the court for determination. The defendant had exacted more than the maximum rate fixed by the ordinance, and did this under the pretense of charging for the use of the meter. In this we think it was wrong. The general rule is that, where an ordinance or a contract discloses on the whole an intent and purpose, it will be construed, if possible without doing violence to the language used, so as to make its enforcement and purpose consistent with the general intent made manifest in and gathered from the whole writing.

In all questions of this kind, the fact must not be lost sight of that the defendant company is a service corporation. The purpose of its organization is to construct and maintain its system within the limits of the municipality, and to serve its inhabitants. The city, acting for the people, has a purpose and desire that the people should have the service offered. Therefore, the right to serve is granted, and the restrictions that protect the inhabitants of the municipality from over-reaching are enacted. When the right to serve is granted with the restrictions, the restrictions become binding upon the service corporation. When a maximum rate is fixed for the services rendered, it cannot, by indirection, increase the burden to the consumer. See *Johnson v. State,* 113 Ind. 143 (15 N. E. 215).

Upon what theory a service corporation can adopt a regulation or make a provision that will result in increasing the

charge upon the consumer above the maximum rate fixed, we do not understand. The maximum rate fixed the burden as well as the right, and the exercise of the right cannot increase the burden.

If it had been shown in this case that the denial of the right to charge for meter rents made the maximum rate unreasonable and unfair to the company, a different question would arise. Here, there is no contention; no effort to show that the maximum rate fixed does not give to the corporation full compensation and remuneration for all the services that it renders to the inhabitants of the city, under the authority granted to it to furnish service. As bearing upon this question, though not directly in point, see *City of Madison v. Madison Gas Co.* (Wis.), 108 N. W. 65. See, also, *City of Buffalo v. Buffalo Gas Co.*, 80 N. Y. Supp. 1093. In this last mentioned case, the defendant was engaged in manufacturing and supplying gas. An action was brought against it to recover a penalty for violating provisions of the statute. The provision alleged to be violated was in these words:

"No gas light corporation in this state shall charge or collect rent on its gas meters, either in a direct or indirect manner."

The trial court found a violation of the law. The court stated the proposition involved in these words:

"The distinct, specific issue decisive of the general question upon this branch of the case is whether such extra charge was directly or indirectly for rental of the meter, or whether, as claimed, . . . it was a charge absolutely independent of meter rental, and designed to cover the general expense of the company in carrying the customer on its books, collecting bills, reading his meter, etc."

The court, in disposing of this branch of the case, said:

"No method has been devised of measuring the quantity of gas used by a consumer so efficient as the meter. Not only is the consumer entitled to be protected against imposition by some safe method of measuring the quantity which he uses,

but it is essential and necessary for the gas company itself that such measurement and test should be accurate. Having in mind these facts, the law in question in effect provides that the consumer shall be supplied with a meter, and that the same shall not only be furnished by the company without charge, but that it shall be inspected by officials designated for that purpose. The object of these provisions is very plain. They contemplate that the gas company desiring to engage in such business shall not take advantage of its customers, either by supplying an untrue meter or by making them pay for the ordinary method of determining what has been consumed. We think such provisions are clearly within the power conferred upon the legislature to enact those laws for the public and general welfare, which are ordinarily known as police regulations. . . . Presumably, as a condition of securing from the municipality certain rights and privileges, a schedule of rates was adopted which, taking into account the entire business, would yield adequate returns in the way of profits. The business of the defendant in the respect under consideration is not materially different from any other large one. . . . A merchant who sells an article of trivial value, delivers it, charges it upon his books, and collects the bill, has the same experience which is complained of by defendant. His profits, if at all, come through the entire volume of business, charged with the entire cost of conducting it.''

See, also, *Johnson v. State* (Ind.), 15 N. E. 215; *Smith v. Capital Gas Company*, 132 Cal. 209 (54 L. R. A. [O. S.] 769).

The primary thing for which compensation is made, and to compensate which rates are fixed, is the service to be rendered by the service corporation to the city and its inhabitants, especially to the inhabitants of the city. The rates fixed should be remunerative. Until the contrary appears, they are presumed to be remunerative. The mind of the legislative body has before it the services to be rendered, and, presumably,

it fixes compensation for the services that is just and equitable between the parties to be affected.

If, in the case at bar, the city had stopped with the first provision of its ordinance, and fixed only the rate for supplying electric light to the inhabitants of the city at 10 cents per kilowatt hour, and had prohibited the defendant from charging or exacting or receiving anything in excess of that amount for supplying electric light, it might be doubtful whether we could assume that this included compensation for the use of meters. It was the duty of the city to fix the rate which would afford a fair compensation to the defendant for supplying electric light to the citizens of the town, and, if nothing further was said than appears in the first provision of the ordinance, we might not be in a position to assume that the amount fixed therein was for more than supplying electric light. But, when we consider the second provision of the ordinance, keeping in mind always that the city was fixing a fair remunerative rate for services to be rendered the inhabitants of the city, we have no trouble in determining that the provision in the first section of the ordinance covers the entire service; for the second provision prohibits charging more than is fixed in the first provision, and negatives the right to charge or exact or receive anything for meters. So we hold that the first provision of the ordinance fixed the maximum rate which the defendant was entitled to charge for all service in supplying electric light to the inhabitants of the city; that this included all the services to be rendered in supplying electric light, and, when taken in connection with the second section of the ordinance, expressly negatives the right to charge more than this maximum rate.

We must assume for the purposes of this case—although the question is not gone into—that, in the instant case, the defendant had charged the maximum amount provided for in the first provision of the ordinance, and, in doing the thing

3. MUNICIPAL COR-
   PORATIONS:
   public utility
   rates: ordi-
   nance fixing
   rates: construc-
   tion.

charged against it, it exacted more than it was entitled to exact under the first provision of the ordinance, or more than the maximum fixed by the ordinance, although it is claimed to be a charge for meter rent. A meter was essential to the service, because it was serviceable in determining the amount to be charged, and the extent of the services rendered. Therefore, it follows that the defendant was, as charged, violating the provision of the ordinance in exacting, in addition to the maximum rate fixed, compensation for the use of its meter. We do not mean to hold that the city could not fix a maximum rate for supplying light, and, in addition, fix a rate for meter service; for we would assume that, if such had been done, it was the judgment of the legislative body creating the ordinance that such compensation would be fair and remunerative, just as we assume now that the first provision of the ordinance gave fair and remunerative compensation for all service, without charge for meters. It follows, therefore, that, as the defendant, as we assume it did, exacted and received 10 cents per kilowatt hour for electric light supplied by it, it violated the ordinance in exacting more, even though it did this under the pretense of exacting it for meter rent.

It is not necessary to decide here, under this record, whether a maximum rate for supplying electric light necessarily includes the supplying of meters, because the very wording of the ordinance itself indicates that it was the purpose and intent of the legislative body creating the ordinance to include all services within the maximum rate fixed.

As bearing upon this question, see 4 McQuillin on Municipal Corporations, Sec. 1729, in which it is said:

"If the price of the supply is fixed by contract or otherwise, the company has no right to require consumers to pay meter rent in addition to the regular rate. So where the rates are fixed, they cannot be indirectly increased by charging a certain sum for taking readings of meters," citing authority.

See, also, Abbott on Municipal Corporations, Vol. 3, Sec. 915, in which it is said:

"The right of the licensee to fix the rates at which its commodities or services may be supplied and furnished, may be limited by conditions in the license, grant or statutes. Or, again, by the universal rule which prevails that in the absence of express restrictions, rates charged must be reasonable. This latter principle is based upon the idea that persons or corporations carrying on the business of furnishing light, water, power or transportation, are to be regarded as engaged in a quasi public business. . . . The state or its subordinate agencies, under these conditions, retains the right to limit charges to those which are reasonable, considering all the circumstances under which they are supplied."

In Section 913 of the same work, we find the author saying:

"Where municipal or public quasi corporations possess the power of regulation, an exercise of that power is legis-- lative in its character. . . . To municipal and public corporations is given by the state the right to exercise certain governmental powers. There is a delegation of this right by the state to its agent. . . . Governmental powers are such as pertain to the sovereign to be exercised for the benefit of the public at large."

See, also, 2 Wyman on Public Service Corporations, Sec. 1251.

This brings us to a consideration of the second point urged, and this involves the authority of the city to impose a fine for a violation of the provisions of this ordinance.

4. MUNICIPAL COR-
PORATIONS: or-
dinance: penal
ordinances:
power to enact:
public utility
rates.

The right to pass the ordinance has been discussed. If, in the exercise of its legislative power, it had a right to enact the ordinance, surely then it had a right to exact obedience to the ordinance. The power to exact obedience to an ordinance is found in Section 680 of the Code of 1897, and reads as follows:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with

the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding $100, or by imprisonment not exceeding 30 days.''

The ordinance in question was an inhibition upon the right of the defendant company to charge, exact, or receive more than the maximum rate therein fixed. The charging, exacting or receiving more was a violation of this inhibition. The inhibition was a part of the ordinance. The doing of the inhibited thing was a violation of the ordinance. Obedience to the ordinance, the city had a right to enforce, and, under this statute, to enforce it by fine not exceeding $100, or imprisonment, as therein provided. Therefore, having the right to enact the ordinance, the right to impose the inhibition, and the right to enforce the ordinance with its inhibitions, the method of its enforcement is clearly provided for in this statute, Section 680.

Judge Dillon, in his valuable work on Municipal Corporations (5th Ed.), Vol. 3, Sec. 1325, upon this subject says:

''The legislative power to regulate the rates and charges of corporations rendering public services in a community may be conferred upon such agencies (referring to municipalities) as the legislature may deem proper. . . . If a city, in addition to the power to regulate rates, has, by statute, the power to impose fines and penalties for the violation of ordinances, it may, by ordinance, make it a misdemeanor for a water or light company to collect or receive more than the maximum rate fixed by it. . . . The regulation of rates is governmental in its nature, and the power is intended to be exercised for the benefit of the inhabitants of the municipality. . . . After a valid rate has been fixed by competent authority, the rate so fixed is the limit of compensation which can be exacted

by the corporation. It cannot decline to furnish water or light to a consumer at the rates fixed by law, and insist that he shall contract therefor at another and a higher rate. But if the service is not included within the cases for which rates are prescribed by ordinance, the company may fix the rates for such service.''

A distinction must be kept in mind between the power to regulate rates and the power to contract as to rates. The regulation of rates for public service belongs to the police power of the state, and, when delegated to the city, it belongs to the police power of the city. The power to regulate has been delegated by express terms, and, under this police power, the city has a right to punish one who violates an ordinance fixing and regulating the charge to be made for public services rendered.

It is a matter of common practice in the large cities of this state to fix by ordinance the rates to be charged for public service, cab drivers, etc., and to provide by ordinance for fine or imprisonment in case more is exacted than the ordinance prescribes.

We assume, however, in this discussion, that the fixing of rates does not impair the obligation of any contract existing between the city and the public service corporation, or any franchise rights. The main question involved in this case is the right of the city to enforce obedience to an ordinance fixing the rate to be charged by a public service company, and, having fixed the rate, the right to provide for punishment by fine in case of violation. This question, disassociated from any contractual obligation or franchise rights, and without any question as to the reasonableness or unreasonableness of the provisions of the ordinance, we are satisfied must be answered in the affirmative.

Upon the whole record, we find no reversible error in the action of the court below, and the cause is—*Affirmed.*

Evans, C. J., Ladd and Salinger, JJ., concur.