TOWN OF WILLIAMS, Incorporated, Appellee, v. IOWA FALLS ELECTRIC COMPANY, Appellant.

**PARTIES: Municipal Corporations.** A municipal corporation which is a customer of a public utility corporation may maintain injunction to prevent an unauthorized or unjustified increase in rates.

**INJUNCTION: Status Quo on Proposed Increase of Utility Rates.** A paper showing, by a public utility corporation (which proposes to increase existing rates for electric light, in opposition to the terms of an admitted ordinance), that existing rates are non-compensatory, furnishes sufficient basis for the dissolution of a temporary injunction against such threatened increase, when viewed in the light of the established principles of law (1) that the power to fix such rates is an exercise of the police power, (2) that such power is purely legislative, (3) that such power cannot be the subject of contract, in the absence of unmistakable grant, and that such grant has been withheld in this state, (4) that all such rates must be compensatory,—in short, that no contract, ordinance, or estoppel can stand in the way of a proper increase of non-compensatory rates,—and when it is further made to appear that such dissolution will more clearly maintain the *status quo*, pending the final hearing on such proposed increase, than would be accomplished by a continuance of the injunction.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

FEBRUARY 17, 1919.

APPEAL from refusal to dissolve a temporary injunction, granted at the suit of the plaintiff town.—*Reversed*

*and remanded.*

*William Chamberlain, John A. Reed,* and *William Smyth,* for appellant.

*Chase & Chase,* for appellee.

SALINGER, J.—I. The defendant Electric Company is operating under a franchise and ordinance granted and enacted by the plaintiff town. Said ordinance provides that rates therein stated shall be in force for 10 years ensuing, and shall continue in force "until a readjustment of rates is demanded by the town or the grantee." The company has notified its patrons that service will be discontinued, unless rates 10 per cent higher than the maximum rates fixed in said ordinance be paid. By a petition to enjoin this proposed action on part of the company, the plaintiff town contends that no readjustment has been demanded; that the proposed increase "is contrary to the franchise and agreement made by the defendant with the plaintiff, and is unauthorized and void," and is without authority of law. The answer of the defendant asserts that a readjustment has been demanded and refused; that, by reason of changed economic conditions, beyond the control of either party, said maximum rates have become inadequate, and, in effect, confiscatory; and that, if the franchise rates be increased as is proposed by defendant, the new rate will still be less than adequate and compensatory. The trial court granted a temporary injunction, restraining defendant from exacting said increase in rates. A motion to dissolve this writ was denied, and defendant appeals from that ruling.

II. If the temporary injunction stands, it may happen that the final decision will sustain the proposed increase, and that some of the patrons will default in paying

the increase. And the appellant contends that the plaintiff town may not maintain this action, because, for one thing, it has no power to obligate itself what, in the supposed case, inhabitant patrons will fail to pay. Some phases of this argument will be considered in another connection. If we assume, for the sake of the argument, that the town may not so bind itself, and further assume it is not so acting as an arm of the state as that no bond is required of it, yet appellee has sufficient interest to maintain this suit. For defendant has answered that, from the date of the granting of the franchise, it has "furnished electric light and power service to the plaintiff and its inhabitants at the rates specified in said ordinance." Therefore, it appears that the *plaintiff* town itself, as well as its inhabitants, is a customer of defendant. That being so, plaintiff surely may protect itself, if an unauthorized or unjustified increase in the rates that it itself is paying as a consumer is threatened. But see *Phelan v. Boone Gas Co.*, 147 Iowa 626; and 5 McQuillin on Municipal Corporations, Section 2505.

*1. PARTIES: municipal corporations.*

III. It is fairly apparent what the final decree will have to settle. But the parties are agreed, and appellee cites decisions from this court to sustain its assertion, that these ultimate questions may not be deter mined on this appeal. Therefore, the sole dispute now is, What shall be done to assure effectiveness of the final decision? In *Wehrman v. Moore*, 177 Iowa 542, we hold that, in preserving such status, the so-called "balance of convenience rule" is to be applied. True, in that case, the question was whether a member of this court might, by order, preserve the status, pending appeal,—whether any order should issue. True that, in the case at bar, the question is, Which of two methods will best save the status, pending litigation be-

*2. INJUNCTION: status quo on proposed increase of utility rates.*

low? But these differences are merely adventitious; and in both cases, the ultimate question is, What is best calculated to make the final judgment effective? The "balance of convenience rule" is, as its name indicates, a test to determine what order will, with the least inconvenience to either party, assure the victorious one the fruits of his decree. It follows that no party may ask to be assured that any judgment he obtains shall be effective, if "it is reasonably clear" that the position in court upon which he seeks judgment "is altogether without any just foundation." *Wehrman v. Moore,* supra. If it may be said, on the application for such interlocutory relief, that, as matter of law, it is clear he will never have any rights to protect, it is idle to inquire what will best protect rights that will never accrue.

On this appeal, we can decide nothing save whether it may be said now that the claims of defendant have no "just foundation." We gather that these claims are the following:

a. The power to fix rates is purely governmental and legislative. So hold *Rogers Park Water Co. v. Fergus,* 180 U. S. 624; *Home Tel. & Tel. Co. v. City of Los Angeles,* 211 U. S. 265; *City of Tipton v. Tipton L. & H. Co.* 176 Iowa 224; 3 Dillon on Municipal Corporations (5th Ed.), Section 1325; and 4 McQuillin on Municipal Corporations (1912), Section 1729, approved in the *Tipton* case. The fixing of rates by ordinance is, in a sense, an exercise of the police force. Wherefore, a fine is enforcible for violating the provisions of the ordinance. *Tipton's* case, 176 Iowa 224.

b. The legislature can give power to a town to contract that rates fixed shall not be changed for a stated period; but authority "to regulate and fix" rates does not authorize such a contract. Power to make such a one can be given by unmistakable grant alone; and without such

grant, no contract that rates shall be unalterable is valid. That has support in *Rosecrans v. United States*, 165 U. S. 257, 263, and in *United States v. Jackson*, 143 Fed. 783, at 787, 788. This is so because enforcing such an one would, in whole or in part, extinguish an undoubted governmental power. So holds *Home Tel. Co. v. City*, 211 U. S. 265. In this state, no question can arise whether the power to make such contract has been granted; because Section 725, Code Supplement, 1913, expressly forbids making such a contract. That is the holding in *Tipton's* case, 176 Iowa 224, and in *Iowa R. & L. Co. v. Jones Auto Co.*, 182 Iowa 982. The fixing of maximum rates in a franchise ordinance is, therefore, not a contract that such rates may not be changed before the time stated in such ordinance has lapsed. It has been held that approval of such rates by the approval of the franchise on the part of the electors is merely an approval of the rates fixed by the franchise as rates temporarily settled, with distinct understanding that the council might change these rates, either upward or downward. *Iowa R. & L. Co. v. Jones Auto Co.*, 182 Iowa 982, so holds. To like effect is *Rogers Park Water Co. v. Fergus*, 180 U. S. 624.

c. The next proposition urged is that something that one party may change without the consent of the other is not a contract. To this we have to say that, in rate cases, the proposition that nothing is, in the true sense, a contract, unless there be a reciprocal obligation, and unless the alleged contract is binding on both, has the approval of numerous decisions in the Supreme Court of the United States, those of other Federal courts, and of courts of last resort in many of our sister states.

d. Next, it is urged that this is not changed by any estoppel arising from the fact that the service company has proceeded under the franchise grant. This is held in *State v. Chariton Tel. Co.*, 173 Iowa 497, and in many de-

cisions by the Supreme Court of the United States and by other courts of high standing.

e. Finally, it is said that the sole limitation upon the governmental power to fix rates, and upon the right of the service company to demand a change to higher rates, is that all rates shall be just and reasonable. This is held in *Iowa R. & L. Co. v. Jones Auto Co.*, supra, *Tipton's* case 176 Iowa 224, and in Abbott on Municipal Corporations, Section 915, approved in the *Tipton* case. The schedule fixed is presumed to fix rates that, "taking into account the entire business, would yield adequate returns in the way of profits." So holds *City of Buffalo v. Buffalo Gas Co.*, 81 App. Div. 505 (80 N. Y. Supp. 1093), approved in *Tipton's* case. It follows there is no occasion for unalterable rates, since all rates must, at all times, be reasonable, fair, adequate, and non-confiscatory,—since the municipality may not use its governmental powers to confiscate, nor the service company demand excessive rates. So holds *Rogers Park Water Co. v. Fergus*, 180 U. S. 624.

In the last analysis, the contention of the appellant, up to this point, is that no contract, no estoppel, no ordinance, nor refusal to amend an ordinance, stands, or can stand, in the way of raising the rates fixed by the plaintiff to a just rate, provided defendant can establish that the rates fixed by the ordinance of plaintiff are not now just, reasonable, and fairly compensatory. As has been shown, this position is well sustained by authority. Hence we cannot say, at this time, that it is clear that such claim should not be sustained on final hearing. The ultimate claim made by the defendant is that, if rates fixed by ordinance are not just, reasonable, and compensatory, and the municipality refuses to change such rates so that they will be that, then the defendant may exact an increase from its patrons, and, if it be attempted to restrain collection, it may successfully defend, by showing that the increase is

justly due it. We are of opinion that claiming the right so to defend is not an unreasonable deduction from what we have shown to be established by authority. Some reasons for this view will be stated in another connection. At any rate, the basis of the deduction cannot be held to be unsound, since, as said, it is well fortified by authority. And the deduction itself cannot be said to be so clearly untenable, if untenable at all, as that we should refuse to preserve the status, on the theory that defendant is clearly not entitled to relief on final hearing.

IV. The next question is: Which method proposed will, with the least possible inconvenience to either, assure each that such judgment as he might obtain shall be effective?

The appellee contends, first, that whether a temporary injunction shall be dissolved leaves so much in the discretion of the court as that we may not interfere on appeal. If that be so, thus broadly stated, the undoubted right to appeal would be of little value. Keeping in mind that the legislature has granted the right to appeal from a refusal to dissolve a temporary injunction, we hold that refusal to dissolve is discretionary only where the propriety of the ruling involves a consideration of a fact question, and that, whenever the appeal from the denial of a motion to dissolve presents questions of law only, the appellate review is as broad as it is on the review of any law question. This distinction has been so often made that we deem citations superfluous. But see *Burlington, C. R. & N. R. Co. v. Dey,* 82 Iowa 312, at 343.

So we reach the question whether the method advocated by appellant is not, as matter of law, preferable to keeping the temporary injunction in force. It contends that the method it proposes best serves the "balance of convenience." Its method is defined in both its answer and its motion to dissolve, and is an offer "to deposit with some

trustee, to be named by this court, and as a fund in court, all sums collected by this defendant company in excess of said ordinance rates, said fund in court to be held by such trustee until the final determination of this action, and then either repaid to the electric consumers of the town of Williams or to this defendant, as the final equities of the case may demand;" and it offers to file with the trustee the sums paid in on the excess rates by each consumer. We find, on examination, that, on stay orders in rate contest cases, it has been the practice of the members of this court and of the court to safeguard the status by requiring such deposit as the defendant tenders, and think that the practice is justified by reason. If the temporary injunction stands, and it shall finally be found that the defendant is entitled to the increased rates, it may be compelled to bring numerous suits for small sums, and may find that many of the debtors have either removed from the jurisdiction or have become insolvent. On the other hand, if the town shall prevail finally, the fund in court will give it and its inhabitants ample protection, without any loss and without any substantial inconvenience. The doubt suggested as to the validity of the injunction bond is, as we have said, not material on the right of plaintiff to sue, but such doubt furnishes an additional reason for favoring the method proposed by defendant. We hold, therefore, that, under the "balance of convenience" rule, the temporary injunction should be dissolved, when said fund in court is substituted.

In view of the conclusions finally reached on this appeal, and of the manner in which the dispute on the appeal is narrowed by the presentation thereof, several practice points made by the parties respectively require no consideration.

The cause is remanded for action in harmony with this opinion.—*Reversed and remanded.*

LADD, C. J., EVANS and PRESTON, JJ., concur.